**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to:**<br><br>*City of Stuart, FL, v. 3M Company et al.*, No. 2:18-cv-03487 |

**DEFENDANTS' OMNIBUS MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ............................................................ 2

    I.    Stuart Supplies An Average Of 2.84 To 3.11 Million Gallons Of Water A Day From The Surficial Aquifer. ...................................................... 2

    II.    Although Stuart Uses A $2.2 Million Ion Exchange System To Treat For PFAS, It Seeks More Than ███████ In Damages. ......................... 4

    III.    Stuart Is Moving Forward with Long-Standing Plans to Transition to a New Water Source, for Reasons Unrelated to PFAS. ............................. 6

SUMMARY JUDGMENT STANDARD ................................................................ 12

LEGAL ARGUMENT .......................................................................................... 13

    I.    Stuart's Nuisance Claim Fails As A Matter Of Law. .......................... 13

        A.    Stuart Seeks To Inappropriately Expand The Scope Of Common-Law Nuisance. ........................................................... 13

        B.    Stuart Has Not Established That Defendants Had The Requisite "Control" At The Time Of Alleged Injury. .............................. 14

    II.    Defendants Are Entitled To Summary Judgment On Three Of Stuart's Four Damages Theories. ........................................................ 15

        A.    Defendants Are Entitled To Summary Judgment On Stuart's Claim For More Than ███████ In Future Damages Related To The PFAS Treatment System. ...................................................... 16

        B.    Defendants Are Entitled To Summary Judgment On Stuart's Claims For ███████ Relating To Exploration Of The Floridan Aquifer. .......................................................................... 19

        C.    Defendants Are Entitled To Summary Judgment On Stuart's Claims For More Than ███████ For Potential Future Soil And/Or Groundwater Remediation. .............................................. 21

    III.    Stuart Bears The Burden Of Establishing Causation As To Each Defendant. ....................................................................................... 24

        A.    Stuart Lacks Sufficient Evidence To Establish That AFFF Was The Likely Cause Of Its Alleged Injury. ............................... 24

        B.    Where There Is Insufficient Evidence Of Product Identification As To Individual Defendants, Summary Judgment Is Warranted As To Those Defendants. .................................................................... 25

CONCLUSION ...................................................................................................... 26

# TABLE OF AUTHOROTIES

**Page(s)**

## Cases

*Bass Venture Corp. v. Devom, LLC,*
  342 So. 3d 821 (Fla. Dist. Ct. App. 2022) .................................................................16

*Beltran v. Rodriguez,*
  36 So. 3d 725 (Fla. Dist. Ct. App. 2010) ..................................................................19

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).................................................................................................12

*Cray Comm'ncs, Inc. v. Novatel Computer Sys., Inc.,*
  33 F.3d 390 (4th Cir. 1994) .....................................................................................12

*Dash v. Mayweather,*
  731 F.3d 302 (4th Cir. 2013) ...................................................................................21

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579 (1993).................................................................................................25

*Davey Compressor Co. v City of Delray Beach,*
  613 So. 2d 60 (Fla. Dist. Ct. App. 1993) ..................................................................18

*Deese v. McKinnonville Hunting Club, Inc.,*
  874 So. 2d 1282 (Fla. Dist. Ct. App. 2004) ..............................................................19

*Del Monte Fresh Produce Co. v. Net Results, Inc.,*
  77 So. 3d 667 (Fla. Dist. Ct. App. 2011) ..................................................................16

*Dietrich v. Wyeth, Inc.,*
  2009 WL 4924722 (Fla. Cir. Ct. Dec. 21, 2009) .......................................................25

*Durrance v. Sanders,*
  329 So. 2d 26 (Fla. Dist. Ct. App. 1976) ..................................................................19

*Guinn v. AstraZeneca Pharmaceuticals LP,*
  598 F. Supp. 29 1239, 1247 (M.D. Fla. 2009) ..........................................................25

*Guinn v. AstraZeneca Pharms. LP,*
  602 F.3d 1245 (11th Cir. 2010) ...............................................................................24

*Hanna v. Martin,*
  49 So. 2d 585 (Fla. 1950).........................................................................................21

*Karpel v. Knauf Gips KG,*
  2022 WL 4366946 (S.D. Fla. Sept. 21, 2022) ......................................................13, 14

**TABLE OF AUTHOROTIES**
**(Continued)**

**Page(s)**

*Levine v. Wyeth Inc.*,
  684 F. Supp. 2d 1338 (M.D. Fla. 2010) ..................................................................25

*Mahl v. Dade Pipe & Plumbing Supply Co.*,
  546 So. 2d 740 (Fla. Dist. Ct. App. 1989) ..............................................................25

*Martinez v. Ascensores Servs., S.A.*,
  89 So. 3d 956 (Fla. Dist. Ct. App. 2012) ................................................................23

*Meyer v. Anderson*,
  2022 WL 17324998 (D.S.C. Nov. 29, 2022) ..........................................................21

*Miller v. Allstate Ins. Co.*,
  573 So. 2d 24 (Fla. Dist. Ct. App. 1990) ................................................................16

*Penelas v. Arms Tech.*,
  1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999) ...............................13, 14, 15, 25

*Siegel v. Cross Senior Care, Inc.*,
  239 So. 3d 738 (Fla. Dist. Ct. App. 2018) ..............................................................19

*Smith v. Schlage Lock Co., LLC*,
  986 F.3d 482 (4th Cir. 2021) ..........................................................................12, 25

*Swindell v. Crowson*,
  712 So. 2d 1162 (Fla. Dist. Ct. App. 1998) ............................................................16

*Thompson v. Potomac Elec. Power Co.*,
  312 F.3d 645 (4th Cir. 2002) ..................................................................................12

*Vill. of Tequesta v. Jupiter Inlet Corp.*,
  371 So. 2d 663 (1979).............................................................................................18

**Statutes**

Fla. Stat. Ann. § 373.216 (West 2022) ...........................................................................7

Fla. Stat. Ann. § 373.223 (West 2022) ...........................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(a) .....................................................................................................12

https://cityofstuart.us/188/Fire-Rescue ........................................................................14

## INTRODUCTION

The City of Stuart ("Plaintiff" or "Stuart") discovered PFAS in its water sources in 2014 and installed an effective PFAS treatment system in 2019. That PFAS treatment system cost $2.2 million to build. Astoundingly, however, Plaintiff now advances damages theories totaling more than ███████ even though it is transitioning to an alternative water source—for reasons unrelated to PFAS—that does not require any treatment for PFAS. To reach these totals, Stuart makes numerous illogical leaps of fact and law in order to assign blame to 14 separate defendants. Through this motion, the Court has the opportunity to narrow the claims and damages theories that would proceed to trial, thereby streamlining any trial proceedings. Summary judgment is warranted in several respects.

*First*, Plaintiff casts a wide legal net by trying to shoehorn this case into a claim for nuisance. Florida law, however, mandates that nuisance claims are not applicable to actions that are, at their core, product liability claims and Florida law further recognizes that product sellers cannot be liable for nuisance because they lack the requisite level of control over their products post-sale. Summary judgment is therefore warranted as to Count V.

*Second*, certain damages theories advanced by Plaintiff's experts wholly ignore—indeed, run directly contrary to—the undisputed facts. Stuart faced longstanding pressure from Florida regulators (pressure that pre-dates any PFAS issues) to transition away from its current water source (the Surficial Aquifer) because that source is crippled by other contaminants and burdened with severe pumping restrictions. As a result, Stuart is actively moving to a new water source (the Floridan Aquifer). It is undisputed that the decision to make this transition was not the result of alleged PFAS contamination of the Surficial Aquifer, and it is undisputed that the Floridan Aquifer will not require PFAS treatment. Yet, despite this move, Plaintiff's experts contend—███████ ████████████████████████████████████████████████████████



Contrary to the undisputed facts, these damages theories are, at best, pure speculation and insufficient to survive summary judgment. At most, Plaintiff can seek reimbursement for the amounts spent on the design and installation of its existing PFAS treatment system, but not more than that.

*Finally*, Plaintiff named a broad swath of AFFF and component manufacturers as defendants. For multiple Defendants for whom discovery has failed to establish that their products (or components in those products) were used by Stuart's fire department, Plaintiff's claims fail for lack of causation as to those individual defendants. Plaintiff otherwise relies on its causation experts—Mr. Brown and Drs. Martin and Higgins—to meet its burden. But, for the reasons articulated in Defendants' Omnibus Motion to Exclude Plaintiff's Experts' Testimony, filed concurrently herewith, those experts failed to utilize reliable methodologies and instead relied solely on unfounded speculation. As a result, their opinions should be excluded and Plaintiff's claims dismissed for lack of causation on issues requiring admissible expert testimony.

## STATEMENT OF UNDISPUTED FACTS

### I.    Stuart Supplies An Average Of 2.84 To 3.11 Million Gallons Of Water A Day From The Surficial Aquifer.

Stuart is a city of approximately 20,000 residents located on Florida's east coast. JX 70 (Water Provider Fact Sheet) at 2[1]; JX 71 (Plaintiff City of Stuart, Florida's Answers and Objections

---

[1] "JX" refers to the joint exhibits filed concurrently in support of this omnibus motion and Defendants' Omnibus Motion to Exclude Plaintiff's Experts' Testimony, also filed concurrently.

to Defense Co-Lead Counsel's First Set of Interrogatories) at 19. Stuart utilizes groundwater from

the Surficial Aquifer to supply water to its residents. JX 71 (First Set of Interrogatories) at 14. ▮

▮ JX 70 (Fact Sheet) at 2.

██████████████████████████████

**II.    Although Stuart Uses A $2.2 Million Ion Exchange System To Treat For PFAS, It Seeks More Than** ████████████ **In Damages.**

Stuart first learned of PFAS in its groundwater source in 2014, as a result of testing conducted in accordance with EPA's Unregulated Contaminant Monitoring Rule 3. JX 71 (First Set of Interrogatories) at 21. Originally, Stuart did not seek to install treatment for PFAS. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████ According to Stuart, ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Stuart contends that t████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Plaintiff seeks four categories of damages. █████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

### III. Stuart Is Moving Forward With Long-Standing Plans To Transition To A New Water Source, For Reasons Unrelated To PFAS.

Critically, although Stuart contends that it needs to expand its PFAS treatment system and operate it for the next 40 years, Stuart already is moving from its existing water source to a new water source that does not require treatment for PFAS. Specifically, Stuart currently draws its drinking water "from the Surficial Aquifer, the shallowest of all the aquifers and a source of limited supply." JX 45 (2013 Water Quality Rept.) at 3. ████████████████████████████

████████████████████████████████████████████████████

---

[2] Mr. Berryhill ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ These realities have limited the

Surficial Aquifer's utility since long before the detection or regulation of PFAS. *See* JX 47 (1981

Stuart Comprehensive Plan) at PU-4. Indeed, ██████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████

The South Florida Water Management District ("District") is the governmental agency that

issues permits dictating how Stuart may use the Surficial Aquifer, including placing restrictions

on the amount of water Stuart may withdraw annually. Fla. Stat. Ann. § 373.216 (West 2022); Fla.

Stat. Ann. § 373.223 (West 2022). As noted above, and as shown in the graphic below, the Surficial

Aquifer is the shallowest groundwater source available; there are other groundwater sources

available to Stuart that are deeper and more protected from potential surface-level contaminants.



In 1998, concerned with the Surficial Aquifer's limitations, the District identified the Floridan Aquifer (specifically, the "Upper Floridan Aquifer" shown in the figure above) as the most promising alternative water source for future needs. JX 46 (1998 Water Supply Plan) at ii.

████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████ On March 9, 2007, in connection with those negotiations, the District directed Stuart to "provide a schedule for the development and implementation of alternate potable sources." JX 56 (2007 SFWMD memo) at ¶1. The District explained that, to meet this requirement, Stuart could either access the Floridan Aquifer directly or interconnect with a utility that already used that aquifer. *See id.*

████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████ This interconnection agreement with Martin County permitted Stuart to draw just over 1 MGD from the Floridan Aquifer via Martin County's wells. JX 74 (City of Stuart Alternative Water Supply Budget Evaluation) at 1. On

November 17, 2009, the District issued Stuart's current permit, which expires November 23, 2029. JX 59 (2009 SFWMD Water Use Permit).

For the next several years, Stuart continued to consider the development of its own alternative water supply. On December 1, 2014, Stuart received from its engineering consultants an updated budget analysis explaining that Stuart "needs to develop an alternative water supply using the Upper Floridan Aquifer and membrane treatment (reverse osmosis – RO)" system. JX 74 (Budget Evaluation) at 1.

One year later, on December 11, 2015, Stuart applied for government funding for a feasibility study: "[T]he City is planning to conduct an Alternative Water Supply Feasibility Study in 2017 to determine the most appropriate capacity, recovery, and size of a reverse osmosis treatment system *to supplement and ultimately replace the existing water supply and treatment system*." JX 62 (2015 Project Application) at 2, 4 (emphasis added). In March 2016, the District found that "[t]he City of Stuart remains a Utility at Risk because it still depends on the [Surficial Aquifer System] and has limited access to alternative sources." JX 52 (2016 Water Plan Update) at 64. ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

While Stuart was pursuing its plans to develop an alternative water supply, in May 2016 the EPA issued updated health advisory levels ("HALs") for PFOA and PFOS. JX 64 (EPA HALs).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

    ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

    ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials demonstrates that "there is no genuine dispute as to any material fact" and a party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant discharges its burden by identifying the absence of evidence on any essential element of a plaintiff's claim, and the plaintiff must then come forward with specific facts to show that there is a genuine issue for trial. *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482, 486 (4th Cir. 2021); *Cray Comm'ncs, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 392-93 (4th Cir. 1994); *see Celotex*, 477 U.S. at 323-24. To defeat summary judgment, the non-moving party must offer more than conclusory allegations or speculation. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

---

[3] None of Stuart's experts allege that the costs of switching to the Floridan Aquifer are an element of Stuart's damages related to the alleged AFFF contamination. Nor could they because, as discussed above, the undisputed facts establish that Stuart was required by the District to find an alternative water supply without regard to alleged PFAS in the Surficial Aquifer.

## LEGAL ARGUMENT

I.    **Stuart's Nuisance Claim Fails As A Matter Of Law**.

This Court should reject Stuart's efforts to transform a product liability case into a nuisance action for two reasons. First, in cases like this that are fundamentally based on product liability, Florida law does not permit plaintiffs to expand nuisance claims beyond their traditional scope. Second, Florida law recognizes that, in these types of cases, manufacturer defendants as well as upstream suppliers lack the requisite level of control post-sale to sustain a claim for nuisance. For these reasons, Defendants are entitled to summary judgment on Stuart's nuisance claim (Count V).

A.    **Stuart Seeks To Inappropriately Expand The Scope Of Common-Law Nuisance**.

To Defendants' knowledge, Florida courts have never applied nuisance law to the sale of products, as Stuart asks this Court to do. To the contrary, in *Penelas v. Arms Tech.*, the Florida court made clear that "nuisance does not apply to the design, manufacture, and the distribution of a lawful product." 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999). "A separate body of law (strict product liability and negligence) has been developed to apply to the manufacture and design of products." *Id.*; *see also Karpel v. Knauf Gips KG*, 2022 WL 4366946, at *7 (S.D. Fla. Sept. 21, 2022) (finding "no precedent in Florida" for allowing plaintiff to sue a drywall manufacturer "on a private nuisance theory by reason of the [drywall's] alleged defects").

Here, Stuart's nuisance claim is predicated on its allegations regarding "Defendants' manufacture, marketing, and sale of AFFF and/or PFAS surfactants for use in AFFF." ECF 54 (Second Am. Compl.) at ¶ 287. Under Florida law, those claims sound in product liability and/or negligence (which Stuart has separately pleaded), not nuisance. Summary judgment is thus appropriate.

### B. Stuart Has Not Established That Defendants Had The Requisite "Control" At The Time Of Alleged Injury.

Stuart's nuisance claim fails for the additional reason that Defendants did not maintain the requisite control over their products or use of their products after the products were sold. To be liable for nuisance under Florida law, a party must be in control of the alleged nuisance at the time it occurred. *Penelas*, 1999 WL 1204353, at *4 ("a party cannot be held liable for nuisance absent control of the activity which creates the nuisance"). If the plaintiff itself or a third party controls the source of the alleged nuisance at the time the alleged nuisance occurs, there is no claim for nuisance. *Karpel*, 2022 WL 4366946, at *8 (dismissing the nuisance claim and holding that "[t]he Plaintiff's ownership and current control over the [source of the alleged nuisance] conclusively forecloses them from arguing that the Defendants actively 'maintain' the 'nuisance' they complain of"); *Penelas,* 1999 WL 1204353, at *4 (dismissing nuisance claim against firearms manufacturers because the use of the firearms by third parties was "beyond the control of the defendants").

Here, Stuart alleges that Stuart Fire Rescue[4]—a public entity indisputably *not* under the control of Defendants—discharged AFFF during firefighting exercises and that this AFFF ultimately resulted in PFOS and PFOA migrating into the groundwater to contaminate the Surficial Aquifer. *See* ECF 54 (Second Am. Compl.) at ¶ 3. Unquestionably, the alleged discharge of AFFF into the environment in the vicinity of Stuart's water supply occurred only after AFFF manufacturers had sold their products and those products left their control. Defendants upstream from the AFFF manufacturers were even farther removed and cannot be held liable on Plaintiff's nuisance theory. In the case of telomer iodide manufacturers, for example, at least three or four parties—fluorosurfactant manufacturers, AFFF manufacturers, AFFF distributors, and AFFF end

---

[4] The City of Stuart Fire Rescue is a department of Stuart's municipal government. https://cityofstuart.us/188/Fire-Rescue

users—existed between the initial sale of the iodides and their alleged discharge into the groundwater. Because "a party cannot be held liable for nuisance absent control of the activity which creates the nuisance," *Penelas*, 1999 WL 1204353, at *4, Defendants are entitled to summary judgment on Stuart's nuisance claim as a matter of Florida law.

## II.     Defendants Are Entitled To Summary Judgment On Three Of Stuart's Four Damages Theories.

Plaintiff's damages theories are set forth in reports from two of its experts—Mr. Kevin Berryhill and Mr. Anthony Brown—and fall into four categories. ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████

Plaintiff, however, goes beyond these amounts and seeks recovery of damages totaling twenty-five times the amount of its alleged out-of-pocket costs. ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Although Plaintiff can present at trial its claim for $4.2 million in costs incurred to date for the PFAS treatment system, there is no basis for its wholly speculative and unsupported claims for an additional ███████████ in damages.

A.    **Defendants Are Entitled To Summary Judgment On Stuart's Claim For More Than** ███████ **In Future Damages Related To The PFAS Treatment System**.

Stuart seeks more than ███████ in damages related to the asserted future operation, expansion, and maintenance of its PFAS treatment system, which it presently uses to treat water from the Surficial Aquifer. To submit a claim for future damages to the jury under Florida law, Stuart must prove both the existence of damages and their amounts to a reasonable degree of certainty. *See Miller v. Allstate Ins. Co.*, 573 So. 2d 24, 27-28 (Fla. Dist. Ct. App. 1990). This means that any viable damages theory "'must have some reasonable basis in fact.'" *Del Monte Fresh Produce Co. v. Net Results, Inc.*, 77 So. 3d 667, 675 (Fla. Dist. Ct. App. 2011) (quoting *Smith v. Austin Dev. Co.*, 538 So. 2d 128, 129 (Fla. Dist. Ct. App. 1989)). Further, "[d]amages cannot be based on speculation, conjecture or guesswork." *Swindell v. Crowson*, 712 So. 2d 1162, 1164 (Fla. Dist. Ct. App. 1998). Stuart's damages theory has no reasonable and non-speculative basis in fact—to the contrary, the undisputed facts actually disprove Stuart's theory. This damages theory must therefore be precluded as a matter of law. *Cf. Bass Venture Corp. v. Devom, LLC*, 342 So. 3d 821, 824-25 (Fla. Dist. Ct. App. 2022) (reversing damages award where plaintiff offered no factual basis for foundational assumption underpinning damages calculation).

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████  █████████████████

---

[5] Defendants have also moved to exclude ████████████████████████████

████████████████████████████████████████

    If that motion is granted, summary judgment is warranted on that basis as well.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ Stuart, however, has made clear that it is *not* going to operate the PFAS treatment system in this manner and, that in fact, in the very near future will start the long-delayed and required process of replacing the Surficial Aquifer as a source of drinking water.

As Mr. Berryhill acknowledges, █████████████████████████████████ ██████████████████████████████████████████████████ As a result of this move to the Floridan Aquifer, Stuart indisputably has no need or plan to increase the amount of water that it draws from the Surficial Aquifer and treats with its current PFAS treatment system. To the contrary, Stuart plans to reduce the amount of water it withdraws from the Surficial Aquifer and treats for PFAS and replace it with water from the Floridan Aquifer that does not need to be treated for PFAS, starting as soon as this year. *Supra*, p. 11. Indeed, there is no reason that Stuart could not have made this switch years ago and thus avoided or mitigated its claimed damages. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ Therefore, although Plaintiff may be entitled to seek costs incurred to date for PFAS evaluation and treatment, there are no quantifiable future "damages" associated with the claims here.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ Because the State of Florida owns all of the groundwater, Stuart's only right to access groundwater is by permit from the District and Stuart thus may only use the Surficial Aquifer in the future if the District grants it a new permit to do so. *See also Vill. of Tequesta v. Jupiter Inlet Corp.*, 371 So. 2d 663, 670-71 (1979). As a matter of Florida law, a water provider may not seek damages related to future water treatment beyond the end-date of its current groundwater use permit because it is impermissibly speculative to assume that the District will grant a subsequent, future water use permit. *Davey Compressor Co. v City of Delray Beach*, 613 So. 2d 60, 62 (Fla. Dist. Ct. App. 1993) ("Since appellee failed to establish its legal interest in the groundwater beneath its well field beyond the expiration date of its water consumptive use permit, appellee cannot recover future damages after the expiration date of its permit.").

Here, the assumption that the District will issue Stuart a new permit to allow it to draw water from the Surficial Aquifer after expiration of the current permit is, at best, utterly speculative.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ And the existing permit contains numerous restrictions on Stuart's ability to pump water from the Surficial Aquifer. JX 83 (Permit modification application) at 2. The notion that the District will approve Stuart's continued use of the Surficial Aquifer after 2029, and at a level of usage remotely comparable to the current level let alone at an increased level as Mr. Berryhill posits, is not just speculative—it is fantasy.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

**B.**     **Defendants Are Entitled To Summary Judgment On Stuart's Claims** ███
███████ **Relating To Exploration Of The Floridan Aquifer**.

The costs borne by Stuart in connection with its shift to the Floridan Aquifer and construction of a reverse osmosis plant to treat the water drawn from the Floridan Aquifer for reasons other than PFAS are not recoverable because they are not damages resulting from the alleged PFAS contamination of the Surficial Aquifer. A plaintiff may recover damages only for harm caused by the defendant's alleged misconduct. *Deese v. McKinnonville Hunting Club, Inc.*, 874 So. 2d 1282, 1287 (Fla. Dist. Ct. App. 2004). Stuart bears the burden to establish causation as to each of its claims. *See Siegel v. Cross Senior Care, Inc.*, 239 So. 3d 738, 741 (Fla. Dist. Ct. App. 2018); *Beltran v. Rodriguez*, 36 So. 3d 725, 727 (Fla. Dist. Ct. App. 2010); *Durrance v. Sanders*, 329 So. 2d 26, 29 (Fla. Dist. Ct. App. 1976).

Notably, Stuart does not seek to recover the full costs of the transition to the Floridan Aquifer; nor could it. ██████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████ Defendants are entitled to summary judgment on any

claim to recover these costs because Stuart would have incurred these costs even in the absence of

the alleged PFAS contamination of water drawn by Stuart from the Surficial Aquifer.

████████████████████████████████████████████████████████████

██████████████████████████

Thus, the undisputed evidence is that years before PFAS were ever detected in the Surficial Aquifer, Stuart began planning its transition to the Floridan Aquifer in response to regulatory pressure and demonstrated need to develop an alternative water source. Under these circumstances, there is no dispute of material fact that Stuart incurred the expenditures related to evaluation and development of the Floridan Aquifer as an alternative water source for reasons completely unrelated to the discovery of PFAS in the Surficial Aquifer and not as a result of Defendants' alleged conduct. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

**C.    Defendants Are Entitled To Summary Judgment On Stuart's Claims For More Than ██████████ For Potential Future Soil And/Or Groundwater Remediation**.

Stuart also uses an improper calculation by one of its other experts, Mr. Anthony Brown, to inflate its damages numbers by an additional ██████████ for soil remediation. To establish its entitlement to damages for remediation, Stuart must present non-speculative evidence that the expenses incurred were necessary to remedy its claimed injury—the contamination of its drinking water. *See Hanna v. Martin*, 49 So. 2d 585, 587 (Fla. 1950) (damages must be "precisely commensurate with the injury"); *Dash v. Mayweather*, 731 F.3d 302, 330 (4th Cir. 2013) (there must be a non-speculative connection between damages and injury); *Meyer v. Anderson*, 2022 WL 17324998, at *7 (D.S.C. Nov. 29, 2022) (to be recoverable, estimation of damages "cannot be based on conjecture or speculation"). But here Stuart attempts to inflate its damages to include future soil and groundwater remediation even though (1) there is no indication that Stuart has taken any steps or has any plans to remediate soil; (2) no regulatory body has required Stuart to remediate

the soil; (3) there is no statute or regulation requiring Stuart to remediate the soil; (4) Stuart has

not established that *both* soil remediation *and* groundwater treatment are needed; (5) Stuart has

not established that there is a health risk requiring remediation of the soil; and (6) Stuart is going

to be drawing water from the Floridan Aquifer, so any claimed relationship, if it were to exist,

between the soil and groundwater in the Surficial Aquifer is irrelevant to damages. Stuart's claim

for damages based on the purely speculative and unwarranted assertion that soil and/or

groundwater remediation is needed should be rejected.



At the outset, Stuart has not established that it is necessary to remediate the soil and the

groundwater at the two sites and offers no standards governing such a speculative remediation

project. Stuart has not suggested that it has taken any steps towards remediating the soil; instead,

as discussed above, it has focused on treating the groundwater withdrawn at its wells for public

use from the Surficial Aquifer. ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

Additionally, Stuart has not offered any evidence that there is a human health risk from

exposure to the allegedly PFAS-contaminated soil itself. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

Instead, ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

Further, Mr. Brown's damages estimate would impermissibly allow Stuart a double recovery. Florida law is clear that "a double recovery based on the same element of damages is prohibited." *Martinez v. Ascensores Servs., S.A.*, 89 So. 3d 956, 959 (Fla. Dist. Ct. App. 2012). Stuart's estimates for treating the groundwater from the Surficial Aquifer at the water treatment plant do not consider the impact of Mr. Brown's proposed soil and groundwater remediation at the Public Safety Complex and Fire Station 2 sites. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Appropriate treatment at Stuart's wells—the need for which will decline as Stuart draws more of its water from the Floridan Aquifer—is sufficient to remedy the purported harm to Stuart from the alleged AFFF-related contamination. Adding Mr. Brown's soil and groundwater remediation damages would impermissibly allow Stuart to obtain

damages for remediation of PFAS and treating the water twice—once in the soil and groundwater near that soil and again at the ion exchange treatment system.

For all these reasons, the claim for damages for soil remediation is speculative at best and more properly viewed simply as an effort to inflate Stuart's damages by an additional ███████. Summary judgment is therefore warranted as to the damages theory set forth in Section 10 of Mr. Brown's report.

### III.    Stuart Bears The Burden Of Establishing Causation As To Each Defendant.

This case involves 14 separate defendants, including six AFFF manufacturers and eight defendants that manufactured components used in different AFFF products. As to each Defendant, Plaintiff's *prima facie* case requires it to establish "that it is more likely than not" that each named Defendant's product "was a substantial factor" in bringing about the alleged injury. *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010) (applying Florida law). "A mere possibility of causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id*. Thus, there must be sufficient evidence identifying each individual defendant's product as a likely cause of the alleged injury. In the absence of such evidence, summary judgment is warranted.

### A.    Stuart Lacks Sufficient Evidence To Establish That AFFF Was The Likely Cause Of Its Alleged Injury.

As set forth in Defendants' Omnibus Motion To Exclude Plaintiff's Experts' Testimony, Plaintiff's causation experts, Mr. Brown and Drs. Higgins and Martin, lack the necessary relevant facts or data or a reliable methodology ██████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████. *See* Defs' Omnibus Memo. in Support of

Mtn. to Exclude Plaintiff's Experts' Testimony at 11-28. Accordingly, Plaintiff's experts' opinions fail to satisfy Rules 702 and 403 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). As a result, to the extent that Plaintiff lacks sufficient evidence to create a triable issue as to the use of any particular Defendant's AFFF or AFFF component part and/or of causation of Plaintiff's claimed injuries, then summary judgment is warranted. *See*, *e.g.*, *Smith*, 986 F.3d at 489 (affirming district court's rejection of plaintiff's causation experts as speculative and affirming summary judgment); *Guinn v. AstraZeneca Pharmaceuticals LP*, 598 F. Supp. 29 1239, 1247 (M.D. Fla. 2009) (rejecting plaintiff's causation expert testimony as speculative and granting summary judgment).

### B. Where There Is Insufficient Evidence Of Product Identification As To Individual Defendants, Summary Judgment Is Warranted As To Those Defendants.

In addition, summary judgment is warranted for lack of causation as to those defendants for which there is insufficient evidence of product identification. "[A] product manufacturer cannot be liable, regardless of the claim or theory asserted, when the plaintiff did not use or consume that manufacturer's product." *Dietrich v. Wyeth, Inc.*, 2009 WL 4924722, at *4, *5 n.2 (Fla. Cir. Ct. Dec. 21, 2009) (citing cases); *cf., e.g.*, *Penelas*, 1999 WL 1204353, at *1 ("Florida law, in fact, requires that a plaintiff allege that a specific defect in a specific product manufactured by a specific manufacturer caused a plaintiff harm in a specific manner."). In the absence of such evidence, summary judgment against the plaintiff is warranted. *See, e.g.*, *Dietrich*, 2009 WL 4924722, at *6; *Mahl v. Dade Pipe & Plumbing Supply Co.*, 546 So. 2d 740, 741 (Fla. Dist. Ct. App. 1989); *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1343, 1345–48 (M.D. Fla. 2010).

█████████████████████████████

█████████████████████████████

█████████████████████████████



These issues are further developed in the individual motions filed by various Defendants concurrently with this motion.

## CONCLUSION

For the reasons presented above, the Court should grant Defendants' Omnibus Motion for Summary Judgment and:

(1) enter judgment in favor of Defendants and against Plaintiff dismissing Plaintiff's private nuisance claim (Count V);

(2) enter judgment in favor of Defendants and against Plaintiff on Plaintiff's claim for future damages related to the PFAS treatment system;

(3) enter judgment in favor of Defendants and against Plaintiff on Plaintiff's claim for damages related to the Floridan Aquifer;

(4) enter judgment in favor of Defendants and against Plaintiff on Plaintiff's claim for damages related to soil and/or groundwater remediation; and

(5) enter judgment in favor of Defendants and against Plaintiff for lack of causation.

Dated: December 2, 2022                    Respectfully submitted,

_/s/ Michael A. Olsen_____

Michael A. Olsen                    Brian Duffy
Mayer Brown LLP                    Duffy & Young LLC
71 South Wacker Drive              96 Broad Street
Chicago, IL 60606                  Charleston, SC 29401

P: (312) 701-7120
F: (312) 706-8742
molsen@mayerbrown.com

Joseph G. Petrosinelli
Williams & Connolly LLP
680 Maine Ave., S.W.
Washington, DC 20024
P: (202) 434-5547
F: (202) 434-5029
jpetrosinelli@wc.com


*Co-Lead Counsel for Defendants*

P: (843) 720-2044
F: (843) 720-2047
bduffy@duffyandyoung.com

David E. Dukes
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Floor
Columbia, SC 29201
P: (803) 255-9451
F: (803) 256-7500
david.dukes@nelsonmullins.com


*Co-Liaison Counsel for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Michael A. Olsen*
Michael A. Olsen