**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG <br><br> **This Document relates to:** <br><br> *City of Stuart, FL, v. 3M Company et al.*, No. 2:18-cv-03487 |

**DEFENDANTS' OMNIBUS MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO EXCLUDE**
**PLAINTIFF'S EXPERTS' TESTIMONY**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 1

I.      Plaintiff's Experts' Opinions On A "Public Health" Standard Of Care Should Be
        Excluded. ............................................................................................................... 1

        A.   The "public health" opinions at issue. ....................................................... 2

        B.   Plaintiff's experts' public health standard of care opinions are inadmissible. ............. 3

II.     Plaintiff's Experts' Opinions On Defendants' Mental States Should Be Excluded. .......... 7

        A.   The mental-state opinions at issue. ............................................................ 8

        B.   Expert opinions on a party's mental state are inadmissible. ....................... 10

III.    Mr. Brown's Opinions, Adopted By Dr. Higgins, That The Primary And Secondary
        Source Of The PFAS Detected In Stuart's Wells Is AFFF, Are Not Reliable. ................ 11

        A.   Mr. Brown's Primary Source Opinion, adopted by Dr. Higgins, is based on a selective
             set of data focused on areas of purported AFFF use.................................... 12

        B.   Mr. Brown's Secondary Source Opinion, adopted by Dr. Higgins, is not based on any
             facts, data, or scientific methodology. ...................................................... 14

IV.     Dr. Martin's Opinions Allocating PFOA To 3M Through His B/L/T-Based Method Are
        Inadmissible. ....................................................................................................... 16

V.      Mr. Brown, Dr. Higgins And Dr. Martin Cannot Testify That C8 Fluorotelomer
        Surfactants In Fluorotelomer AFFF Transformed Into PFOA At Stuart. ...................... 21

        A.   Mr. Brown abandoned his original opinion and now relies on Dr. Higgins'
             inadmissible speculation that FT-AFFF transformed to PFOA at Stuart. ................. 22

        B.   Dr. Higgins' and Dr. Martin's opinions that FT-AFFF is a substantial contributing
             source of PFOA in Stuart's wells is unreliable speculation based on theoretical lab
             studies they never connect to reality. ........................................................ 23

        C.   Dr. Martin failed to investigate the environmental conditions at Stuart and the
             existence (if any) of C8 in the FT-AFFF allegedly discharged at Stuart, rendering any
             opinion that FT-AFFF transformed to PFOA unreliable. ............................... 26

VI.     Mr. Brown's And Mr. Berryhill's Persistence Opinions Are Inadmissible..................... 28

        A.   Mr. Brown's opinions regarding the persistence of PFOS in subsurface soil and
             groundwater are speculative, unreliable, and unhelpful to the jury........................... 28

        B.   Mr. Brown cannot testify regarding PFOA persistence because he conducted no
             modeling of it at all. ................................................................................ 33

VII.    The Court Should Exclude Mr. Walton's Opinions In Their Entirety............................. 34

VIII.  Mr. Johnson's Opinions Are Inadmissible Because They Are Neither Helpful Nor Reliable. .................................................................................................................... 38

CONCLUSION........................................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banco Multiple Santa Cruz, S.A. v. Moreno*,
  888 F. Supp. 2d 356 (E.D.N.Y. 2012) ......................................................................6

*Bell v. Foster Wheeler Energy, Corp.*,
  No. 15-6394, 2016 WL 5847124 (E.D. La. Oct. 5, 2016) ................................................26, 27

*Benjamin v. Peter's Farm Condo. Owners Ass'n*,
  820 F.2d 640 (3d Cir. 1987)............................................................................39

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
  524 F. Supp. 2d 1166 (N.D. Cal. 2007) ....................................................................12

*Bishop v. Triumph Motorcycles (Am.) Ltd.*,
  2022 WL 17103710 (4th Cir. Nov. 22, 2022)............................................................12, 24

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
  627 F. Supp. 2d 384 (D.N.J. 2009) ......................................................................10

*In re C.R. Bard, Inc.*,
  948 F. Supp. 2d 589 (S.D.W. Va. 2013) ..................................................................10

*Chapman v. Procter & Gamble Distrib., LLC*,
  766 F.3d 1296 (11th Cir. 2014) ........................................................................13

*Chikovsky v. Ortho Pharm. Corp.*,
  832 F. Supp. 341 (S.D. Fla. 1993) ......................................................................24

*City of Huntington v. AmerisourceBergen Drug Corp.*,
  2021 WL 1320716 (S.D.W. Va. Apr. 8, 2021)..............................................................5

*Connor v. Covil Corp.*,
  996 F.3d 143 (4th Cir. 2021) ..........................................................................25

*Contractors Ass'n of E. Pa. Inc. v. City of Philadelphia*,
  893 F. Supp. 419 (E.D. Pa. 1995) ......................................................................12

*Cooper Hotel Servs., Inc. v. MacFarland*,
  662 So. 2d 710 (Fla. Dist. Ct. App. 1995) .................................................................5

*Cooper v. Meritor, Inc.*,
  2019 WL 545187 (N.D. Miss. Feb. 11, 2019) ..............................................................13

# TABLE OF AUTHOROTIES
## (Continued)

**Page(s)**

*Cooper v. Smith & Nephew, Inc.*,
   259 F.3d 194 (4th Cir. 2001) ...................................................................13

*Daniels-Feasel v. Forest Pharm., Inc.*,
   2021 WL 4037820 (S.D.N.Y. Sept. 3, 2021)........................................14

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ......................................................... *passim*

*Democracy N. Carolina v. N. Carolina State Bd. of Elections*,
   476 F. Supp. 3d 158 (M.D.N.C. 2020) ...............................................5, 6

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab.*
   *Litig.*,
   2000 WL 876900 (E.D. Pa. June 20, 2000) ..........................................10

*Doolin v. Ford Motor Co.*,
   2018 WL 4599712 (M.D. Fla. Sept. 25, 2018) ......................................22

*Dunn v. Sandoz Pharm. Corp.*,
   275 F. Supp. 2d 672 (M.D.N.C. 2003) .................................................24

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
   345 F. Supp. 3d 897 (S.D. Ohio 2015) ...................................................5

*In re E.I. Du Pont De Nemours and Co. C-8 Pers. Inj. Litig.*,
   2016 WL 659112 (S.D. Ohio Feb. 17, 2016)..........................................5

*Evans Packing Co. v. Dep't of Agric. & Consumer Servs.*,
   550 So. 2d 112 (Fla. Dist. Ct. App. 1989) ..............................................7

*Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*,
   2021 WL 4820738 (M.D.N.C. Oct. 15, 2021) .......................................10

*Gates v. Rohm & Haas Co.*,
   265 F.R.D. 208 (E.D. Pa. 2010).............................................................30

*Gen. Elec. Co. v Joiner*,
   522 U.S. 136 (1997)..........................................................................22, 26

*Good v. Am. Water Works Co., Inc.*,
   2016 WL 6024426 (S.D.W. Va. Oct. 13, 2016) ......................................6

# TABLE OF AUTHOROTIES
## (Continued)

**Page(s)**

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)........................................................................36

*Hines v. Wyeth*,
    2011 WL 2680842 (S.D.W. Va. July 8, 2011), *order clarified on
    reconsideration*, 2011 WL 2730908 (S.D.W. Va. July 13, 2011) ...........................11

*Kidder, Peabody & Co., Inc. v IAG Int'l Acceptance Grp., N.V.*,
    14 F. Supp. 2d 391 (S.D.N.Y. 1998)........................................................................11

*Klaczak v. Consol. Med. Transp. Inc.*,
    2005 WL 1564981 (N.D. Ill. May 26, 2005) ...........................................................11

*Lee-Bolton v. Koppers Inc.*,
    319 F.R.D. 346 (N.D. Fla. 2017) .............................................................................13

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Prods. Liab.
    Litig.*,
    2016 WL 827067 (D.S.C. Feb. 29, 2016) .................................................................38

*In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products
    Liability Litigation*,
    2016 WL 2940784 (D.S.C. May 6, 2016)......................................................... *passim*

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) .........................................................................5

*Milward v. Rust-Oleum Corp.*,
    820 F.3d 469 (1st Cir. 2016) ....................................................................................13

*Mitchell v. Gencorp Inc.*,
    165 F.3d 778 (10th Cir. 1999) ..................................................................................24

*Murray v. Marina Dist. Dev. Co.*,
    311 F. App'x 521 (3d Cir. 2008) .................................................................................6

*Nat'l Ass'n of Clean Water Agencies v. EPA*,
    734 F.3d 1115 (D.C. Cir. 2013)................................................................................33

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004)..........................................................................10

## TABLE OF AUTHOROTIES
### (Continued)

**Page(s)**

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994)........................................................................................18

*In re Pharmacy Benefit Managers Antitrust Litig.*,
    2017 WL 275398 (E.D. Pa. Jan. 18, 2017) ...........................................................30

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ...................................................................10

*Salem v. U.S. Lines Co.*,
    370 U.S. 31 (1962)..................................................................................................39

*Sardis v. Overhead Door Corp.*,
    10 F.4th 268 (4th Cir. 2021) ..................................................................................29

*Sheppard v. CSX Transp., Inc.*,
    2002 WL 34378297 (D.S.C. Nov. 8, 2002) .............................................................6

*Siegel v. Blue Giant Equip. Corp.*,
    793 F. App'x 737 (10th Cir. 2019) ........................................................................35

*Smith v. Ford Motor Co.*,
    2013 WL 214378 (D. Utah Jan. 18, 2013).............................................................14

*Smith v. Goodyear Tire & Rubber Co.*,
    495 F.3d 224 (5th Cir. 2007) .................................................................................35

*Soldo v. Sandoz Pharm. Corp.*,
    244 F. Supp. 2d 434 (W.D. Pa. 2003)....................................................................24

*Tyree v. Bos. Sci. Corp.*,
    54 F. Supp. 3d 501 (S.D.W. Va. 2014)..................................................................10

*United States v. Bynum*,
    3 F.3d 769 (4th Cir. 1993) .....................................................................................16

*Valente v. Textron, Inc.*,
    931 F. Supp. 2d 409 (E.D.N.Y. 2013) ...................................................................33

*Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*,
    2021 WL 3883597 (D. Md. Aug. 12, 2021) ..........................................................10

*Voilas v. Gen. Motors Corp.*,
    73 F. Supp. 2d 452 (D.N.J. 1999) ..........................................................................39

# TABLE OF AUTHOROTIES
## (Continued)

**Page(s)**

*In re Welding Fume Prods. Liab. Litig.*,
  2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) ..................................................4, 5

*Westberry v. Gislaved Gummi AB*,
  178 F.3d 257 (4th Cir. 1999) ...........................................................................10

*Wolfe v. McNeil-PPC, Inc.*,
  881 F. Supp. 2d 650 (E.D. Pa. 2012) ...............................................................10

*Zellers v. NexTech Northeast, LLC*,
  533 F. App'x 192 (4th Cir. 2013) .....................................................................35

**Other Authorities**

Benskin et al. *Perfluorinated acid isomer profiling in water and quantitative
  assessment of manufacturing source*, 44 Envtl. Sci. & Tech. 23, 9049–54
  (2010). ..............................................................................................................20

Gao et al., *Levels, special distribution, and isomer profiles of perfluoroalkyl acids
  in soil, groundwater and tap water around a manufactory in China*,
  Chemosphere 227:305–314 (2019). ..................................................................20

Karrman et al., *Environmental levels and distribution of structural isomers of
  perfluoroalkyl acids after aqueous fire-fighting foam (AFFF) contamination*,
  8 Envtl. Chemistry 372–380 (2011)..............................................................18, 20

Martin et al., *Analytical Challenges Hamper Perfluoroalkyl Research*, Envtl. Sci.
  & Tech. 251A (2004). ........................................................................................20

Nickerson et al., *Spatial trends of anionic, zwitterionic, and cationic PFASs at an
  AFFF-impacted site*, 55 Envtl. Sci. Tech. 1, 313–232 (2021)..............................20

## INTRODUCTION

Plaintiff, a small town in Florida, intends to ask the jury to award it more than ███████ in damages related to alleged drinking water contamination from PFAS—specifically PFOS and PFOA. To get to that number, it has sued 14 different defendants across multiple levels of the supply chain that used different chemical processes to manufacture their products.

To say the least, this will present the jury with complex, novel, and important issues that indisputably require reliable expert testimony. But that is not what Plaintiff's experts offer this jury. Instead, they have declined to gather data necessary to substantiate their conclusions. They have made no effort to connect theoretical laboratory studies to the actual conditions on the ground in Stuart. They have skipped necessary analyses. And they have at times invented unreplicable methodologies or used no methodology at all.

If Plaintiff expects a jury to award it such fantastical damages, it has to do the necessary work. Otherwise, the jury will be left to rely on speculation and guesswork, filling gaps that Plaintiff's own experts never even tried to close. This is not a matter of—in what will undoubtedly be Plaintiff's refrain—weight versus admissibility. This is about the fact that Plaintiff has proffered "experts" to provide litigation-driven advocacy founded on no real expertise or reliable methods, both of which are essential under Rule 702 for an expert to withstand the Court's critical gatekeeping function to keep junk science out of the jury room. The Court should not allow Plaintiff to mislead the jury with these experts.

## ARGUMENT

### I.     Plaintiff's Experts' Opinions On A "Public Health" Standard Of Care Should Be Excluded.

Four experts, Drs. Siegel, Levy, and MacIntosh and Mr. Petty, opine ████████
████████████████████████████████████████████████████████

1

████████████████████████████████████████████████████████. This Court excluded materially identical opinions in *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, 2016 WL 2940784, at *5–6 (D.S.C. May 6, 2016), and should do the same here.

### A.    The "public health" opinions at issue.

Siegel. Dr. Siegel proposes to testify about ███████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████ In other words, Dr. Siegel would usurp the Court's role by espousing a standard of care and then the jury's by declaring that standard violated.

Levy. Similar to Dr. Siegel, Dr. Levy opines that when ███████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████ Based on this principle, Dr. Levy likewise seats himself in the jury box by concluding that ████████████████████████

---

[1] "JX" refers to the joint exhibits filed concurrently in support of this omnibus motion and Defendants' Omnibus Motion for Summary Judgment, also filed concurrently.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

MacIntosh. Although Dr. MacIntosh's report does not expressly ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Petty. Mr. Petty opines as to whether ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

**B.**     **Plaintiff's experts' public health standard of care opinions are inadmissible.**

As this Court noted in *Lipitor*, it is "the role of the Court to instruct on the law and the jury's role to apply the facts to the law," not an expert's. 2016 WL 2940784, at *6. Thus, expert opinions "about the corporation's legal duties and obligations" are not admissible. *Id.* This is true regardless of whether an expert attempts to avoid the legal standard of care through artful phrasing: "[O]pinions that [a defendant] had a 'duty' or 'obligation' to take a specific action has the potential to mislead or confuse the jury and lead the jury to believe that such statements are based on legal

duty." *Id.* Thus, testimony on the precautionary principle is improper because "the duties demanded by this principle are not coterminous with the legal obligations that are relevant in this case." *In re Welding Fume Prods. Liab. Litig.*, 2005 WL 1868046, at *21 (N.D. Ohio Aug. 8, 2005) (barring Dr. Levy's precautionary-principle opinion).

The opinions of Plaintiff's public health experts are materially indistinguishable from the opinions excluded in *Lipitor* and similar cases because they are equally subjective and untethered to any binding legal or industry standard. For example, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

Like Dr. Siegel, Dr. Levy admits that █████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

In other words, these experts base their opinions on nothing more than their "personal opinion[s]" on corporate ethics. *Lipitor*, 2016 WL 2940784, at *5. But "opinions on a corporation's purported ethical requirements, and whether a particular defendant met those requirements, will not help a juror navigate [an instruction based on applicable state law]; indeed, because [the expert's] opinions are all premised on a moral compass, not a legal one, confusion is almost assured." *Welding Fume*, 2005 WL 1868046, at *21; *see also City of Huntington v. AmerisourceBergen Drug Corp.*, 2021 WL 1320716, at *3 (S.D.W. Va. Apr. 8, 2021) ("expert testimony regarding defendants' corporate ethics, duties, or responsibilities should be excluded").[2]

Plaintiff's experts' opinions on public health standards also cast aside Plaintiff's fundamental burden of persuasion. *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible."). Under Florida law, Plaintiff must establish that defendants breached a duty of care. *See, e.g., Cooper Hotel Servs., Inc. v. MacFarland*, 662 So. 2d 710, 712 (Fla. Dist. Ct. App. 1995). ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ This, too, renders such testimony inadmissible, because "reversal of the burden of proof is often cited as a corollary to the precautionary principle." *Welding Fume*, 2005 WL 1868046, at *21; *see also Democracy N.*

---

[2] In a case Plaintiff can be expected to rely on, Dr. Siegel was permitted to testify about a public health "duty of care" "in the context of speaking about the then-governing industry standards and best practices." *In re E.I. Du Pont De Nemours and Co. C-8 Pers. Inj. Litig.*, 2016 WL 659112, at *48 (S.D. Ohio Feb. 17, 2016). But as explained below, the evidence here shows the public health standard of care is *not* an industry standard. *See infra* pp. 6–7. And while a different opinion in the *C-8 Personal Injury Litigation* permitted Dr. Levy and Mr. Petty to opine on public health standards, that case did not apply the Fourth Circuit standard this Court applied in *Lipitor* and is unpersuasive for the reasons *Lipitor* makes clear. *See In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 345 F. Supp. 3d 897, 904–12, 916–18 (S.D. Ohio 2015).

*Carolina v. N. Carolina State Bd. of Elections*, 476 F. Supp. 3d 158, 197 n.12 (M.D.N.C. 2020) (rejecting the precautionary principle because it would "shift the burden to Defendants to prove the absence of harm rather than properly placing the burden on Plaintiffs to demonstrate a likelihood of success").

Tort law exists, of course, in part to influence behavior, and it does so by judging conduct against industry standards that are "well known and commonly accepted." *Good v. Am. Water Works Co., Inc.*, 2016 WL 6024426, at *8 (S.D.W. Va. Oct. 13, 2016) (citing *Handley v. Union Carbide Corp.*, 804 F.2d 265, 273 (4th Cir. 1986)). Accordingly, an industry standard relevant to assessing the standard of care must be grounded in objective sources that a defendant could know and follow *ex ante*, based on the standard that "actually prevails in the industry." *See, e.g.*, *Murray v. Marina Dist. Dev. Co.*, 311 F. App'x 521, 524 (3d Cir. 2008) (excluding expert testimony where expert failed "to identify the source of any industry standards . . . allegedly applicable to [defendant]"); *Sheppard v. CSX Transp., Inc.*, 2002 WL 34378297, at *10 (D.S.C. Nov. 8, 2002) (excluding testimony where expert failed to identify an adequate source for the duties he sought to impose).

In contrast, opinions like those offered here measure how the industry should conduct itself based entirely on *ex post* subjective evaluations of conduct and, as such, cannot be "evidence of the relevant industry standard of care." *Banco Multiple Santa Cruz, S.A. v. Moreno*, 888 F. Supp. 2d 356, 375 n.21 (E.D.N.Y. 2012). Indeed, Plaintiff's experts admit that ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ And although an industry standard must be "well known and commonly accepted," *Good*, 2016 WL 6024426, at *8, Dr. Levy admits ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

Finally, to serve any normative purpose and have any legal validity, an industry standard must have been in place at the relevant time. *See, e.g.*, *Evans Packing Co. v. Dep't of Agric. & Consumer Servs.*, 550 So. 2d 112, 121 (Fla. Dist. Ct. App. 1989) (citing later-enacted method "misse[d] the point completely" because it was the industry standard at the relevant time that was "of critical importance in determining whether [the defendant] failed to comply with required standards or practices"). There is no evidence that any "public health" standard prevailed throughout the decades relevant to this case, let alone at any particular point in time.[3]

Because Drs. Siegel, Levy, and MacIntosh and Mr. Petty seek to offer opinions regarding subjective, amorphous public health standards, in violation of this Court's precedent and Rule 702, the Court should bar those experts from offering such testimony at trial.

## II.    Plaintiff's Experts' Opinions On Defendants' Mental States Should Be Excluded.

Plaintiff would impose on the jury no fewer than eight experts—Dr. Siegel, Mr. Petty, Dr. Levy, Dr. MacIntosh, Dr. Higgins, Dr. Martin, Dr. Lowder, and Dr. Travis—to attempt to explain Defendants' mental states over time. These are not expert opinions at all, for they rely on no

---

[3] Mr. Petty suggests that █████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

specialized knowledge or reliable methodology. They would not only fail to assist the jury; they would supplant its role entirely. The Court should exclude these opinions.

**A.      The mental-state opinions at issue.**

<u>Siegel</u>. Dr. Siegel spends much of his report musing about ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

<u>Petty</u>. Mr. Petty similarly ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

Mr. Petty then ██████████████████████████████████████████

████████████████████████████████████████████████████████



Levy. Dr. Levy offers opinions on

Martin/Higgins/MacIntosh/Lowder/Travis. Drs. Martin, Higgins, MacIntosh, Lowder, and Travis each also opine improperly on certain Defendants' mental states. [4]



**B.     Expert opinions on a party's mental state are inadmissible.**

Expert testimony must (1) concern specialized knowledge and (2) assist the jury. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). But "[o]pinions about another's knowledge, motive, or state of mind are generally unhelpful to the jury because jurors can draw these conclusions themselves." *Vertellus Holdings LLC v. W.R. Grace & Co.-Conn.*, 2021 WL 3883597, at *12 (D. Md. Aug. 12, 2021). And "expert testimony concerning state of mind, intent, or purpose is unreliable because it is not grounded in analytically sound principles or methods." *Fuma Int'l LLC v. R.J. Reynolds Vapor Co*., 2021 WL 4820738, at *3 (M.D.N.C. Oct. 15, 2021). Plaintiff's experts' opinions about Defendants' state of mind are thus inadmissible.

Opinions going to intent or motive are especially problematic. "The question of intent is a classic jury question," *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000), and thus "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony," *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004). Thus, an expert cannot testify about what a defendant was "'trying' to do" or "what it believed was right or wrong," or similar issues, as those questions go to intent or motive. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 440 (D.N.J. 2009); *see also Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443 & n.9 (D. Del. 2004); *Wolfe v. McNeil-PPC, Inc.*, 881 F. Supp. 2d 650, 661 (E.D. Pa. 2012) (excluding expert opinion that "a company like McNeil is willing to risk the lives of innocent Americans"); *Tyree v. Bos. Sci. Corp.*, 54 F. Supp. 3d 501, 553 (S.D.W. Va. 2014), as amended (Oct. 29, 2014); *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 610–11 (S.D.W. Va. 2013). Plaintiff's experts offer similarly improper opinions on motive or intent here. *See supra* pp. 8–9.

For similar reasons, knowledge-based opinions are improper, too. "[P]roffered expert assertions about another's . . . knowledge are not helpful to the jury," because the jury is "equally

if not much better suited" to assess that issue than an expert. *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *8 (N.D. Ill. May 26, 2005). Thus, in *In re Flonase Antitrust Litigation*, the court excluded an expert's testimony that a corporate defendant was "well aware" of an issue. 884 F. Supp. 2d 184, 193 (E.D. Pa. 2012). Similarly, in *AstraZeneca UK Ltd. v. Watson Laboratories, Inc. (NV)*, the court excluded an expert's opinion about what a corporation "knew or intended." 2012 WL 6043266, at *2 (D. Del. Nov. 14, 2012); *see also Kidder, Peabody & Co., Inc. v IAG Int'l Acceptance Grp., N.V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998). Plaintiff's experts offer opinions materially indistinguishable from these cases. *See supra* pp. 8–9.

At bottom, Plaintiff's experts simply string record materials into an emotional narrative about what Defendants knew or intended. But testimony that "merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness" is improper. *Hines v. Wyeth*, 2011 WL 2680842, at *5 (S.D.W. Va. July 8, 2011), *order clarified on reconsideration*, 2011 WL 2730908 (S.D.W. Va. July 13, 2011). Accordingly, the Court should preclude Plaintiff's experts from opining on Defendants' knowledge, motives, intent, or other mental states.

III.    **Mr. Brown's Opinions, Adopted By Dr. Higgins, That The Primary And Secondary Source Of The PFAS Detected In Stuart's Wells Is AFFF, Are Not Reliable.**

Through Mr. Brown and Dr. Higgins, Plaintiff theorizes ███████████████ █████████████████████████████████████████████████████. But rather than gathering necessary data and using a reliable methodology, these experts instead reach these conclusions by relying on a *lack* of data and facts that is entirely of Plaintiff's own making.

Mr. Brown opines that ███████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ Neither opinion passes muster

under Rule 702 and both should be excluded.

**A.    Mr. Brown's Primary Source Opinion, adopted by Dr. Higgins, is based on a selective set of data focused on areas of purported AFFF use.**

To reach his Primary Source Opinion, ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████ Mr. Brown's Primary Source Opinion, however, is not good science because he bases it

entirely on a limited set of data focused on the purported AFFF use areas and intentionally ignores

the other potential sources of PFAS at Stuart. *Bishop v. Triumph Motorcycles (Am.) Ltd.*, 2022 WL

17103710, at *1–2 (4th Cir. Nov. 22, 2022); *In re Bextra & Celebrex Mktg. Sales Practices &

Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (the "cherry-picking" of favorable

data "does not reflect scientific knowledge, is not derived by the scientific method, and is not 'good

science'"); *Contractors Ass'n of E. Pa. Inc. v. City of Philadelphia*, 893 F. Supp. 419, 436 (E.D.

Pa. 1995).

For example, it is undisputed ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

Yet, Plaintiff's experts never did the work to rule out these or any other admitted potential non-AFFF sources of PFAS, as they must. *See*, *e.g.*, *Cooper v. Meritor, Inc.*, 2019 WL 545187, at *19, 22 (N.D. Miss. Feb. 11, 2019); *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 373–74 (N.D. Fla. 2017); *see also Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 476 (1st Cir. 2016). They must do so by providing "reasons for rejecting alternative hypotheses using scientific methods and procedures," and their failure to do so "'renders [the] analysis essentially worthless.'" *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1310 (11th Cir. 2014); *Cooper*, 2019 WL 545187, at *19; *see also Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) (exclusion is proper "if an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause"). This is especially important in cases like this one, where PFAS is "ubiquitous in [the] environment" and can and very often does come from non-AFFF sources. *Cf. Lee-Bolton*, 319 F.R.D. at 373.

In fact, ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

This absence of supporting data for other PFAS sources is entirely of Plaintiff's own making. ████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████ That failure is telling, as Plaintiff must know—given the ubiquity of PFAS in thousands of industrial and consumer products—that to ask the question would have been to get an unfavorable answer.

To state the obvious, a plaintiff cannot create an absence of data and then turn around and declare victory based on that absence. Rule 702 requires Mr. Brown to gather necessary facts and data and then apply a reliable methodology to reach his conclusions. He did nothing of the kind. The Court should therefore exclude Mr. Brown's Primary Source Opinion. *See Smith v. Ford Motor Co.*, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013) ("Rule 702 and *Daubert* recognize above all else that to be useful to a jury an expert's opinion must be based on sufficient facts and data. [Plaintiff's] theory is based on the opposite: a lack of facts and data."); *Daniels-Feasel v. Forest Pharm., Inc.*, 2021 WL 4037820, at *4 (S.D.N.Y. Sept. 3, 2021).

**B.     Mr. Brown's Secondary Source Opinion, adopted by Dr. Higgins, is not based on any facts, data, or scientific methodology.**

Mr. Brown's Secondary Source Opinion is even more unsubstantiated. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



is not a scientifically valid and admissible conclusion—it is just an untested hypothesis.

Indeed, Mr. Brown's report does not describe any scientific analysis or cite any data in support of his Secondary Source Opinion. In fact, he ███████████████████████ ████████████████████████████████████ Thus, Mr. Brown's opinions represent an untested and untestable hypothesis, which should be excluded

under Rule 702. *United States v. Bynum*, 3 F.3d 769, 773 (4th Cir. 1993) ("'Scientific' knowledge is generated through the scientific method—subjecting testable hypotheses to the crucible of experiment in an effort to disprove them. An opinion that defies testing, however defensible or deeply held, is not scientific.").

## IV.    Dr. Martin's Opinions Allocating PFOA To 3M Through His B/L/T-Based Method Are Inadmissible.

Plaintiff's expert Dr. Martin purports to be able to show what proportion of PFOA in Stuart's wells came from 3M through an invented-for-litigation method that has never been replicated or tested. Because Dr. Martin used no reliable methodology to conclude that this PFOA most likely came from 3M, his opinions on that question should be excluded.

Dr. Martin ███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████

But Dr. Martin opined ███████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

Applying his new unvalidated and unreplicated B/L/T method to samples at Stuart, ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

Dr. Martin's allocation opinion based on his modified B/L/T analysis is inadmissible for three reasons. *First*, "[o]ne very significant fact to be considered" under *Daubert* and its progeny is whether the expert developed his opinion for the litigation; the reliability of a test that has not been subject to peer-review, publication, use by others, or vetting for error-rate is suspect. *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*").

Dr. Martin's opinions fail all those metrics. He explained that the ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████—especially in light of the serious errors in that methodology described below. *See Daubert II*, 43 F.3d at 1317; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994) (court may consider "whether the method has been subject to peer review" or "is generally accepted" and "the relationship of the technique to methods which have been established to be reliable"); *Lipitor*, 145 F. Supp. 3d at 576–77 (court may "verify that expert testimony is based on sufficient facts or data" (internal quotation marks omitted)).

*Second,* Dr. Martin failed to account for isomer fractionation that occurs in the environment, further rendering his conclusions unreliable. When two simultaneously-released environmental contaminants travel at different speeds through subsurface soil and groundwater, the ratio between their concentrations will change the further away from the source one samples. This process is called "fractionation." Specifically with respect to PFOA, studies show that linear isomers travel slower than branched isomers through the environment, which can cause the relative percentage of branched isomers to increase the farther PFOA travels from the source area. JX 78, Karrman et al., *Environmental levels and distribution of structural isomers of perfluoroalkyl acids after aqueous fire-fighting foam (AFFF) contamination*, 8 Envtl. Chemistry 372–380 (2011). Dr. Martin's analysis ignores these effects, ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

      Dr. Martin ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████  ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

But even accepting Dr. Martin's incorrect premise ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Regardless, Dr. Martin's data belies his assumption that fractionation does not occur in

groundwater. ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████  ████████████████████████████████████

[5] In fact, Plaintiff's own expert ████████████████████████████

████████████████████████████████████████████████  ████████

[6] ████████████████████████████████████████████████████

████████████████████████████████████████ Other studies reported in the peer-
reviewed scientific literature have similarly shown enrichment of branched PFOA isomers in
groundwater samples—the hallmark of fractionation. JX 79, Nickerson et al., *Spatial trends of
anionic, zwitterionic, and cationic PFASs at an AFFF-impacted site*, 55 Envtl. Sci. Tech. 1, 313–
232 (2021); JX 78, Karrman et al., *Environmental levels and distribution of structural isomers of
perfluoroalkyl acids after aqueous fire-fighting foam (AFFF) contamination*, 8 Envtl. Chemistry



Either way, Dr. Martin's results prove that his methodology is unreliable.

*Third*, Dr. Martin acknowledged that the B/L/T method is ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In fact, Dr. Martin has previously acknowledged in the literature that an EPA method that suffers from the same limitation "imposes systematic bias of unknown proportions on the accuracy" of the result. JX 81, Martin et al., *Analytical Challenges Hamper Perfluoroalkyl Research*, Envtl. Sci. & Tech. 251A (2004).

One way to guard against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Martin has performed such analyses outside of litigation when conducting studies for publication in peer-reviewed literature. JX 82, Benskin et al. *Perfluorinated acid isomer profiling in water and quantitative assessment of manufacturing source*, 44 Envtl. Sci. & Tech. 23, 9049–54 (2010). Yet, Dr. Martin declined to perform that analysis here. When it comes to litigation, therefore, Dr. Martin does not take a basic step to ensure his methodology is reliable that he does take when conducting

---

372–380 (2011); JX 80, Gao et al., *Levels, special distribution, and isomer profiles of perfluoroalkyl acids in soil, groundwater and tap water around a manufactory in China*, Chemosphere 227:305–314 (2019).

actual science. That is the very definition of litigation-driven science, and Dr. Martin's resulting

opinions should be excluded.

**V.      Mr. Brown, Dr. Higgins And Dr. Martin Cannot Testify That C8 Fluorotelomer Surfactants In Fluorotelomer AFFF Transformed Into PFOA At Stuart.**

To the extent they find PFOA that they cannot attribute to ECF-based products in some of

Stuart's wells, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

In fact, Mr. Brown admittedly cannot offer any opinion as to ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Such

opinions are not based on scientific facts, data, or methodology and, instead represent the type of "backwards reasoning" or expert say-so that should be excluded. *Gen. Elec. Co. v Joiner*, 522 U.S. 136, 146 (1997) (district courts should not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Doolin v. Ford Motor Co.*, 2018 WL 4599712, at *13 (M.D. Fla. Sept. 25, 2018).

### A.    Mr. Brown abandoned his original opinion and now relies on Dr. Higgins' inadmissible speculation that FT-AFFF transformed to PFOA at Stuart.

In drafting his report, Mr. Brown assumed that █████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ █████████████████████████████████████████

After realizing his error, Mr. Brown █████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████████████

Mr. Brown has no basis for testifying on the topic of FT-AFFF as a source of PFOA in Stuart's wells under Rule 702 since he concedes that (█████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

**B.**    **Dr. Higgins' and Dr. Martin's opinions that FT-AFFF is a substantial contributing source of PFOA in Stuart's wells is unreliable speculation based on theoretical lab studies they never connect to reality.**

Like Mr. Brown, Dr. Higgins concedes ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Specifically, ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ Critically, however,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████ Even more problematic, none of Plaintiff's experts offer any evidence that such conditions existed in Stuart specifically.

23

To meet the legal threshold in a case like this one, Plaintiff's experts must connect their theory based on experimental lab conditions to the real world environment in Stuart. ████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ They cannot, conversely, simply assume that one thing (here, laboratory conditions) is necessarily like another (here, actual environmental conditions in Stuart). *See Bishop*, 2022 WL 17103710, at *1; *Chikovsky v. Ortho Pharm. Corp.*, 832 F. Supp. 341, 345–46 (S.D. Fla. 1993) (rejecting an expert's attempt to extrapolate from studies showing teratogenic effects of high doses of Vitamin A to low doses from Retin-A, which contains a derivative of Vitamin A); *Dunn v. Sandoz Pharm. Corp.*, 275 F. Supp. 2d 672, 681 (M.D.N.C. 2003); *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999); *Soldo v. Sandoz Pharm. Corp.*, 244 F. Supp. 2d 434, 548–50 (W.D. Pa. 2003).

Yet, Dr. Higgins has done precisely that, relying ████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████

The same is true of Dr. Martin. Like Dr. Higgins and Mr. Brown,



To summarize, t

Because *none* of these experts has performed the analyses and data gathering necessary to conclude that conditions in Stuart itself are in any way comparable to the chemical and physical conditions used to induce transformation in the lab-based studies, they have abdicated their fundamental responsibility to be helpful to the jury by connecting theory to reality. *See Connor v. Covil Corp.*, 996 F.3d 143, 155 (4th Cir. 2021) (explaining that the "mere possibility of . . . causation is not enough" to show "the conduct of [a] defendant was a substantial factor in bringing about the result"). They cannot, therefore, reliably opine that any PFOA—much less a substantial contributing amount—was formed as a transformation product of C8 molecules in FT-AFFF used

in Stuart. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *Bell v. Foster Wheeler Energy, Corp.*, No. 15-6394, 2016 WL 5847124, at *3 (E.D. La. Oct. 5, 2016).

**C.    Dr. Martin failed to investigate the environmental conditions at Stuart and the existence (if any) of C8 in the FT-AFFF allegedly discharged at Stuart, rendering any opinion that FT-AFFF transformed to PFOA unreliable.**

Dr. Martin spends nearly his entire report purporting to ██████████████████████

███████████████████████ through his modified "B/L/T analysis" described above, while ████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

For one thing, Dr. Martin concedes ██████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████

For another, Dr. Martin's analysis is yet another example of Plaintiff taking a shortcut rather than doing the work necessary to shoulder its burden. Dr. Martin's sole analysis of █████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████

This is speculation, not science. Given the ubiquity of telomer-based industrial and consumer products, it is undisputed that FTS can come from non-AFFF sources, just as is the case with any other type of PFAS. Yet, Dr. Martin concludes ████████████████████████

████████████████████████████████████████████

This unsupported and far-reaching extrapolation is problem enough. But, ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

\*    \*    \*

In sum, Mr. Brown's, Dr. Higgins', and Dr. Martin's speculative opinions that ██

████████████████████████████████████████████████████████████

████████████████████████████████ are unreliable and entirely divorced from the scientific and factual evidence in this case. Indeed, these opinions are pure inadmissible say-so, which are unreliable and unhelpful to the jury.

**VI.    Mr. Brown's And Mr. Berryhill's Persistence Opinions Are Inadmissible.**

In order to determine how long Stuart's wells need to be treated, Mr. Brown ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

**A.    Mr. Brown's opinions regarding the persistence of PFOS in subsurface soil and groundwater are speculative, unreliable, and unhelpful to the jury.**

To predict PFOS persistence, Mr. Brown proceeded in two steps. First, ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████ These oversimplified and unreliable opinions as to PFOS persistence are inadmissible for four reasons.

*First*, Mr. Brown does not address the only relevant issue—how long treatment will be necessary to address PFOS levels in Stuart's drinking water at Stuart's water treatment plant.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

The batch flush model, ████████████████████████████ fares no better. ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

In short, Mr. Brown concedes that ████████████████████████████████████

███████████████████████████████████████████████ Accordingly, Mr. Brown's opinions do not address any relevant issue and are inadmissible. *See, e.g.*, *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) ("Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded.").

*Second*, in yet another example of theory divorced from reality, Mr. Brown did ██████████

████████████████████████████████████████████████████



Worse still, "an average is an average is an average . . . a convenient fiction made up of numbers that are higher and lower than the average." *Gates v. Rohm & Haas Co*., 265 F.R.D. 208, 222 n.25 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011). An average says nothing about the conditions in any particular location, much less the conditions *in Stuart*, the relevant question. *Cf. In re Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *20 (E.D. Pa. Jan. 18, 2017) (an expert's opinion relying on "averages cannot demonstrate" impact to any particular individual). Accordingly, just as with Plaintiff's failure to connect FT-AFFF degradation laboratory studies to reality, Mr. Brown has no basis to conclude that any of these studies are relevant to assessing how PFOS will persist in Stuart.

Mr. Brown similarly failed to 

At bottom, all of these errors are symptoms of the same underlying infirmity: ██████

████████████████████████████████████████████████████████ Instead, he skipped reliable scientific analysis of the

conditions at Stuart in favor of arbitrary averages that do not even purport to assess the conditions at any particular location, much less Stuart. That renders his opinions inadmissible. *See Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1153–54 (D.C. Cir. 2013) (use of values in equation without scientific justification means there was no reasonable basis for selection of those values); *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 424 (E.D.N.Y. 2013) ("[A] simulation must be evaluated against the specific facts at issue in order to ensure that the model can reliably recreate the relevant" circumstances (internal quotation marks omitted)).

### B. Mr. Brown cannot testify regarding PFOA persistence because he conducted no modeling of it at all.

On top of its many flaws, Mr. Brown's persistence modeling solely examines PFOS. █████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

        ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████ Such opinions are speculative, unreliable, and unhelpful to the jury.

**VII.    The Court Should Exclude Mr. Walton's Opinions In Their Entirety.**

Plaintiff has designated Gregory Walton to opine about the manufacture of fluorosurfactants and AFFF. Although all of his opinions suffer from the same fatal shortcomings, he offers three main opinions: █████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ The

Court should exclude Mr. Walton's proposed testimony in its entirety. He lacks relevant expertise.

His opinions are not reliable or helpful to the jury. And his opinions do not fit the facts of this case.

Lack of expertise. Whatever a witness's credentials or general experience, he does not

qualify as an expert under Rule 702 unless he has specific expertise relevant to the subject matter

at hand. *Zellers v. NexTech Northeast, LLC*, 533 F. App'x 192, 197–99 (4th Cir. 2013); *Siegel v.*

*Blue Giant Equip. Corp.*, 793 F. App'x 737, 740–42 (10th Cir. 2019). ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

But the problem with allowing Mr. Walton to opine on ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ *See Zellers*, 533 F. App'x at 197 (upholding exclusion

of neurologist whose knowledge of toxicology "primarily came from a survey of scientific articles

downloaded from the internet"); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 226–27 (5th

Cir. 2007) (chemist not qualified where he based conclusions on information "found during several

hours of online research").

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Lack of reliability. To form his opinions, Mr. Walton relies on two facts gleaned from his review of documents Plaintiff gave him: ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

But those opinions are unreliable and unhelpful. *First*, facts regarding ████████████████

████████████████████████████████████████████ if otherwise admissible, come into evidence on their own for whatever they are worth. Mr. Walton, who lacks personal knowledge or relevant expertise, should not be allowed to parrot those facts. *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468–69 (S.D.N.Y. 2005). ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

*Second*,  ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Mr. Walton's third opinion noted above,  ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████ "Allowing testimony based on an obviously false

assumption . . . would be abdicating this Court's role as a gatekeeper under *Daubert*." *In re Lipitor*

*(Atorvastatin Calcium) Marketing, Sales Practices and Prods. Liab. Litig.*, 2016 WL 827067, at

*3 (D.S.C. Feb. 29, 2016).

<u>Lack of fit.</u> Mr. Walton's opinions are independently inadmissible because they do not fit

the disputed issues in this case. Plaintiff's theory is that it has been injured by the presence in its

water supply of low part-per-trillion, or even (unmeasurable) part-per-quadrillion, concentrations

of PFOS and PFOA from AFFF. █████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████ Thus, Mr. Walton's opinions are simply

irrelevant to this case. His testimony will do nothing but waste time and confuse the jury.

## VIII.    Mr. Johnson's Opinions Are Inadmissible Because They Are Neither Helpful Nor Reliable.

Mr. Johnson opines on two issues: ██████████████████████████████

███████████████████████████████████ Both opinions are inadmissible.

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ In

addition, the Supreme Court has long recognized that "expert" testimony may be excluded "if all the

primary facts can be accurately and intelligibly described to the jury, and if they, as [people] of

38

common understanding, are as capable of comprehending the primary facts and drawing correct

conclusions from them as are" the experts. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (internal

quotation marks and brackets omitted).

Here, Mr. Johnson ████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ That is not expert testimony, and

it should be excluded. *See Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452, 468 (D.N.J. 1999)

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Mr. Johnson ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

"Although mathematical exactness is not required, testimony [on damages] must be based upon

the proper factual foundation" or else it must be excluded. *Benjamin v. Peter's Farm Condo.*

*Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987).

Mr. Johnson similarly could not explain why ███████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████

The basic and simple concept behind present value is that $1 today is worth more than $1

in the future. ███████████████████████████████████████████

████████████████████████     The Court should not permit him to mislead the jury.

**CONCLUSION**

For these reasons, the Court should exclude the foregoing opinions of Plaintiff's experts.

Dated: December 2, 2022     Respectfully submitted,

/s/ *Michael A. Olsen*

Michael A. Olsen       Brian Duffy
Mayer Brown LLP       Duffy & Young LLC
71 South Wacker Drive     96 Broad Street
Chicago, IL 60606       Charleston, SC 29401
P: (312) 701-7120       P: (843) 720-2044
F: (312) 706-8742       F: (843) 720-2047
molsen@mayerbrown.com    bduffy@duffyandyoung.com

Joseph G. Petrosinelli     David E. Dukes
Williams & Connolly LLP    Nelson Mullins Riley & Scarborough LLP
680 Maine Ave., S.W.     1320 Main Street, 17th Floor
Washington, DC 20024     Columbia, SC 29201
P: (202) 434-5547       P: (803) 255-9451
F: (202) 434-5029       F: (803) 256-7500
jpetrosinelli@wc.com      david.dukes@nelsonmullins.com

*Co-Lead Counsel for Defendants*   *Co-Liaison Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 2, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

/s/ Michael A. Olsen
Michael A. Olsen