IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | MDL No. 2:18-mn-2873-RMG <br><br> ORDER AND OPINION <br><br> This Order Relates to <br> *City of Stuart, Fl. v. 3M Co., et al.*, <br> Case No. 2:18-cv-3487-RMG |

Before the Court are various motions in limine filed by Defendant 3M Company ("3M"). (Dkt. Nos. 2923, 2933). Plaintiff opposes in part. (Dkt. No. 2960). For the reasons set forth below, the Court rules as follows.

I.  **Background**

Plaintiff the City of Stuart ("Plaintiff," "Stuart" or the "City) alleges that various Defendants manufactured and distributed aqueous film-forming foam ("AFFF") and/or fluorosurfactant additives for use in AFFF that contaminated the City's water supply with PFAS, including PFOS and PFOA. (*City of Stuart, Fl. v. 3M Co., et al.*, 2:18-cv-3487-RMG, Dkt. No. 54, ¶ 1).

On March 24, 2023, 3M filed various motions in limine. (Dkt. No. 2923). Plaintiff opposes motions in limine nos. 1 and 4. (Dkt. No. 2966). As to motions in limine nos. 2 and 3, Plaintiff indicates it "has no present intention of introducing" the evidence subject to those motions. Accordingly, 3M's motions in limine nos. 2 and 3 are denied as moot. As to 3M's motion, joined by other Defendants, to exclude evidence relating to the film "Dark Waters" and "The Devil We

Know," (Dkt. No. 2933), Plaintiff also indicates that it has no intention of introducing evidence of or referring to either film. Accordingly, this additional motion is denied as moot.

3M's remaining motions in limine are fully briefed and ripe for disposition.

## II.     Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nonetheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

## III.     Discussion

First, as to motion in limine no. 1, 3M seeks to preclude evidence "related to 3M's compliance with TSCA's [Toxic Substances Control Act of 1976] reporting requirements and 3M's 2006 TSCA settlement with EPA." (Dkt. No. 2923 at 5-8). 3M's motion contains specific argument only as to why its 2006 TSCA settlement with the EPA should excluded and the Court analyzes this point below. 3M's motion, however, contains no argument as to why evidence of "compliance with TSCA's reporting requirements" more generally should be excluded. By

contrast, Plaintiff explains why evidence of such compliance is relevant to 3M's knowledge of the alleged dangers of PFAS. (Dkt. No. 2960 at 9). Thus, as to general compliance with the TSCA's reporting requirements, the Court denies the motion.

Turning now to 3M's TSCA settlement with the EPA, 3M explains that in 2006 it entered into a $1.5 million settlement with the EPA to resolve allegations concerning reporting requirements related to chemicals including PFAS. (Dkt. No. 2923 at 5). Said settlement was memorialized by a Consent Agreement and Final Order (the "Settlement Agreement"). (Dkt. No. 2923-2).

3M argues that the Settlement Agreement must be excluded for four reasons. First, 3M argues the settlement is not relevant under Fed. R. Evid. 401 because "alleged TSCA violations or regulatory penalties [have] no causal nexus to the contamination alleged by Plaintiff." (Dkt. No. 2923 at 6). Second, 3M argues admission of the Settlement Agreement would violate the terms of the Settlement Agreement itself, which state that it is not "admissible in evidence against 3M or any person, except as and to the extent necessary either in a proceeding to which 3M and EPA are parties to enforce the provisions of" the agreement. (*Id.* at 6-7). 3M does not dispute, however, that Plaintiff is not a party to said agreement or otherwise contractually bound by the terms of the Settlement Agreement. Third, 3M argues admission of the Settlement Agreement would violate Rule 408. Fourth and last, 3M argues the Settlement Agreement is improper "bad actor" evidence under Rule 404(b). 3M states that it is "not asking the Court to prevent Plaintiff from identifying studies that were in 3M's possession" and relevant to this action. (Dkt. No. 2923 at 9). Rather, 3M seeks to prevent Plaintiff from using the Settlement Agreement "as a proxy for such evidence to appeal to the passion and sympathy of the jurors, confuse the issues, pursue a de facto claim for alleged TSCA violations, and unfairly prejudice 3M." (*Id.* at 10).

In response, Plaintiff argues, inter alia, that the Settlement Agreement is relevant to 3M's knowledge of PFAS's alleged dangers. Plaintiff argues:

> Without evidence of this consent decree which required 3M to self-audit and disclose additional risk information in 2006, Plaintiff will be prejudiced and handicapped in that it will not be able to tell the true story and facts of how 3M delayed the regulatory process and was not the good corporate steward it claims should be celebrated for having had the foresight to phase out the manufacturer of these dangerous chemicals early on.

(Dkt. No. 2960 at 6). Plaintiff argues a limiting instruction can be given to the jury with respect to the Settlement Agreement to cure any unfair prejudice to 3M. *See In re E.I. Du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-md-2433, 2016 U.S. Dist. LEXIS 19880, at *1321-23 (S.D. Ohio Feb. 17, 2016) (admitting a consent agreement between DuPont and the EPA with a limiting instruction).

The Court denies 3M's motion in limine no. 1. As articulated in Plaintiff's opposition, the Settlement Agreement is relevant, at the very least, to 3M's knowledge of alleged dangers associated with PFAS. As such, admission of the Settlement Agreement for this purpose would not violate Rules 404 or 408. The Court will consider, however, providing a limiting instruction for the Settlement Agreement. The parties are encouraged to meet and confer in good faith as to the drafting of such a limiting instruction in advance of the June 1, 2023 pretrial hearing in this matter.

Last, in motion in limine no. 4, 3M argues the Court should preclude Plaintiff from offering evidence about the money that 3M has paid to experts in this MDL or in other cases involving PFAS. (Dkt. No. 2923 at 13). 3M admits such information is in fact admissible but argues it would be "highly prejudicial." 3M does not articulate, however, why such information is "unfairly" prejudicial.

The Court denies 3M's motion on this final point. *United States v. Abel*, 469 U.S. 45, 52, 105 S. Ct. 465, 469, 83 L. Ed. 2d 450 (1984) ("Proof of bias is almost always relevant . . . ."); (Dkt. No. 2960 at 11) (noting that between January 1, 2012 and May 31, 2022, in PFAS related cases, 3M paid $17,778,927.00 to Gradient, the expert service vendor who employs Manu Sharma, Barbara Beck, Kurt Herman, Tim Verslycke, and Caroline Tuit and $9,298,777.19 to Exponent, Inc., the service provider who employees Maureen Reitman and Renee Kalmes). Evidence related to 3M's payment of experts is relevant to bias. Accordingly, 3M's motion is denied on this final point. *United States v. Greenwood*, 796 F.2d 49, 54 (4th Cir. 1986) ("Bias, defined as emotional partiality, is not a collateral issue. The point of a bias inquiry is to expose to the jury the witness's special motive to lie by revealing facts such as pecuniary interest in the trial, personal animosity, favoritism toward the defendant, or the witness's plea agreement with the government." (citations and internal marks omitted)); *Bilenky v. Ryobi Ltd.*, 2014 WL 12591078, at *4 (E.D. Va. Oct. 22, 2014) (denying defendant's motion to exclude expert's "history of [] testimony" for former employer in unrelated matters where employer had fabricated product at issue, finding any "danger in misleading the jury or the jury's confusing the issues does not substantially outweigh the probative value of impeachment evidence Plaintiff intends to order"); *see Jones v. Young*, 2007 U.S. Dist. LEXIS 67554, 2007 WL 2695621, at *2 (E.D. Ark. Sept. 10, 2007) ("The income that an expert derives from litigation-related activities and whether that income is predominantly earned from plaintiffs or defendants relates to the motives that a witness may have for testifying a certain way.").

## IV. <u>Conclusion</u>

For the foregoing reasons, the Court **denies** 3M's motions in limine nos. 1 and 4, **denies as moot** 3M's motions in limine nos. 2 and 3, and **denies as moot** 3M's motion as to Dark Waters or The Devil We Know (Dkt. Nos. 2923, 2933).

**AND IT IS SO ORDERED.**

                                             s/ Richard Mark Gergel
                                             Richard Mark Gergel
                                             United States District Judge

May 15, 2023
Charleston, South Carolina