IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | ) MDL No. 2:18-mn-2873-RMG ) ) ORDER AND OPINION ) ) This Order Relates to ) *City of Stuart, Fl. v. 3M Co., et al.*, ) Case No. 2:18-cv-3487-RMG ) ) |

Before the Court is Plaintiff's motion in limine no. 6 to exclude all evidence, reference, testimony, comment, inference, document, and/or argument suggesting that Plaintiff's costs of implementing necessary water filtration systems has been (or will be) covered by the state of Florida and/or other third parties. (Dkt. No. 2926). For the reasons set forth below, the Court grants-in-part and denies-in-part Plaintiff's motion.

**I.   Background**

Plaintiff the City of Stuart ("Plaintiff," "Stuart" or the "City) alleges that various Defendants manufactured and distributed aqueous film-forming foam ("AFFF") and/or fluorosurfactant additives for use in AFFF that contaminated the City's water supply with PFAS, including PFOS and PFOA. (*City of Stuart, Fl. v. 3M Co., et al.*, 2:18-cv-3487-RMG, Dkt. No. 54, ¶ 1).

On March 24, 2023, Plaintiff filed a motion to exclude all evidence and arguments related to Plaintiff's application for, or receipt of, funding from the State of Florida or other third parties to upgrade, replace, maintain, or operate its water system. (Dkt. No. 2926). Defendants oppose.

(Dkt. No. 2966). Plaintiff filed a reply. (Dkt. No. 2972-1).[1] Plaintiff's motion is fully briefed and ripe for disposition.

## II.    Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nonetheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

## III.   Discussion

After learning in 2016 that it had PFAS in its water supply above the Environmental Protection Agency's then Health Advisory Level, Plaintiff applied for, and received $17.3 million in State Revolving Fund loans, with $893,000 debt forgiveness, from the State of Florida to transition its main water source from the Surficial Aquifer System ("SAS") to the deeper Floridan Aquifer System ("FAS") and to filter the FAS-sourced water using a reverse osmosis filtration

---

[1] On April 10, 2023, Plaintiff moved for leave to file a reply, (Dkt. No. 2972), which the Court **GRANTS**.

system. (Dkt. No. 2926 at 2); (Dkt. No. 2926-1 at 14-15). Plaintiff, however, abandoned its plan to transition to the FAS as its primary water source and decided to continue sourcing its water from the SAS and to treat the SAS water using an expanded ion exchange filtration system. *See* (Dkt. No. 2926-4 at 16-17) (testimony of Plaintiff expert Ronald Kevin Berryhill that use of an ion exchange to treat water from the surficial aquifer is more cost effective than reserve osmosis treatment of water from FAS); (Dkt. No. 2926 at 2). Plaintiff admits that its damages model assumes all of Plaintiff's water going forward will be sourced from the SAS and filtered through the ion exchange system. (Dkt. No. 2926 at 3).

Plaintiff admits that the funds received from the State of Florida are "not a collateral source constituting double recovery" but nevertheless argues said funds should "be excluded by the collateral source rule" or under Federal Rule of Evidence 403. (Dkt. No. 2926 at 4).

### A. Collateral Source Rule

The collateral source rule is a rule of evidence and damages that is of common law origin. *See Metoyer v. Auto Club Family Ins. Co.*, 536 F.Supp.2d 664, 667 (E.D. La. 2008). The damages portion of the rule "holds that compensation from a collateral source should be disregarded in assessing tort damages." *Hylind v. Xerox Corp.*, 31 F.Supp.3d 729, 734 (D. Md. 2014); *accord Atlanta Channel, Inc. v. Solomon*, 583 F.Supp.3d 174, 213 (D.D.C. 2022) ("The collateral source rule is a substantive rule of tort damages; it provides that an injured person may usually recover in full from a wrongdoer regardless of anything he may get from a collateral source unconnected with the wrongdoer."). "[T]he most common reason for the rule is that a defendant should not be allowed to benefit from the outside benefits provided for the plaintiff." *Metoyer*, 536 F.Supp.2d at 667; *accord Falconer v. Penn Maritime, Inc.*, 397 F.Supp.2d 144, 146 (D. Me. 2005) ("The rationale for the rule is that either the injured party or the tortfeasor is going to receive a windfall,

if a part of the pecuniary loss is paid for by an outside source and that it is more just that the windfall should inure to the benefit of the injured party than that it should accrue to the tortfeasor."); *Hudson v. Lazarus,* 217 F.2d 344, 346 (D.C. Cir. 1954) ("Usually the collateral contribution necessarily benefits either the injured person or the wrongdoer. Whether it is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted.")

The evidentiary corollary "bars the introduction of evidence that a plaintiff has received benefits or payments from an independent source." *Fruge v. B.J. Servs. Co.*, No. 07-1025, 2009 WL 1408933, at *1 (W.D. La. May 18, 2009); *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 387 n.3 (4th Cir. 2010) ("The substantive rule . . . carries with it an evidentiary rule requiring exclusion of evidence of any collateral benefits"). The evidentiary rule derives from a concern of jury prejudice: "that evidence of collateral benefits may cause the jury to feel that awarding damages would overcompensate the plaintiff for his injury (even though the defendant would only pay once), and may factor this into the liability calculus." *Hylind*, 31 F.Supp.3d at 735.

Here, Plaintiff argues that evidence and argument that Plaintiff has applied for and received any funds from the State of Florida will prejudice Plaintiff by confusing the jury on issues of liability and damages and may provide Defendants the type of undeserved windfall that the collateral source rule was designed to prevent. (Dkt. No. 2926 at 4-7). Defendants argue—and as noted above, Plaintiff admits—that the collateral source rule does not apply to this evidence because the funds were granted for a project that Plaintiff has abandoned and are separate from Plaintiff's damages model. (Dkt. No. 2966 23-25).

The Court finds that evidence of the funds may unfairly prejudice the jury by causing the jury to feel that awarding damages would overcompensate Plaintiff even though the funds are not related to Plaintiff's water treatment plan that Plaintiff seeks damages for. These concerns are only implicated, however, by Plaintiff's *receipt*, not application for, funds. Accordingly, the Court excludes evidence and arguments related to Plaintiff's receipt of funding/loans from the State of Florida or other third parties to upgrade, replace, maintain, or operate its water system.

Defendants, however, are not barred from presenting evidence or argument that transitioning to the Floridan Aquifer as the primary source of water would be a more cost-effective method of water treatment. Defendants may use evidence related to Plaintiff's grant applications to present that argument. It is proper for Defendants to contest Plaintiff's damages model and to challenge Plaintiff's credibility. The Court views this evidence as evidence of an alternate damages theory that the jury should weigh and does not find that any of the concerns related to the collateral source rule would be implicated.

### B. Federal Rule of Evidence 403

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Plaintiff argues that evidence of its receipt of funding from the State of Florida should be excluded under Rule 403. (Dkt. No. 2926 at 6). The Court outlined the unfair prejudice Plaintiff may experience if this evidence is admitted under its collateral source analysis. The concern regarding the jury's perception of overcompensation to the Plaintiff and its potential to reduce damages in benefit for the Defendant also applies in the 403 analysis. Additionally, the Court does not find that Plaintiff's receipt of funds has significant probative value of damages or liability.

Accordingly, the Court finds, regarding Plaintiff's receipt of funds from the State of Florida, that the probative value is substantially outweighed by the danger of unfair prejudice to Plaintiff. Defendants are barred from introducing evidence that Plaintiff received funding from the State of Florida for its water system.

Plaintiff also argues that its grant applications should be excluded under Rule 403 because the applications have limited probative value in demonstrating Plaintiff's evaluation of PFAS removal costs because they do not purport to account for the total cost of PFAS removal and because the estimates contained within the applications are outdated. (Dkt. No. 2926 at 6-7). Defendants argue that evidence contained within the grant applications is highly relevant because Plaintiff made representations both before and after it learned about PFAS in its drinking water that it was planning to switch from the Surficial Aquifer to the Floridan Aquifer as the primary water source of its water supply and those representations undermine the claim by Plaintiff and its expert witness that Defendants should bear the cost of treating water sourced from the Surficial Aquifer for the next 40 years. (Dkt. No. 2966 at 26). At this time, and on the record before it, the Court finds that the relevance is not substantially outweighed by unfair prejudice for the grant application evidence. Defendants are not prospectively barred from presenting evidence or argument that transitioning to the Floridan Aquifer as the primary source of water would be a more cost-effective method of water treatment and Defendants may use evidence related to Plaintiff's grant applications to present that argument.

## IV.   Conclusion

For the foregoing reasons, the Court **grants-in-part** and **denies-in-part** Plaintiff's motion in limine no. 6 (Dkt. No. 2926) as detailed herein.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

May 25, 2023
Charleston, South Carolina