IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG <br><br> **ORDER AND OPINION** <br><br> This Order Relates to <br> *City of Stuart, Fl. v. 3M Co., et al.*, <br> Case No. 2:18-cv-3487-RMG |

Before the Court is Plaintiff's omnibus motions in limine no. 7. (Dkt. No. 2927). For the reasons set forth below, and as detailed herein, the Court rules as follows.

I.   **Background**

Plaintiff the City of Stuart ("Plaintiff," "Stuart" or the "City) alleges that various Defendants manufactured and distributed aqueous film-forming foam ("AFFF") and/or fluorosurfactant additives for use in AFFF that contaminated the City's water supply with PFAS, including PFOS and PFOA. (*City of Stuart, Fl. v. 3M Co., et al.*, 2:18-cv-3487-RMG, Dkt. No. 54, ¶ 1).

On March 24, 2023, Plaintiff filed the instant motion in limine. (Dkt. No. 2827). Defendants oppose. (Dkt. No. 2966)

Plaintiff's motion is fully briefed and ripe for disposition.

## II. Legal Standard

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, Crim. No. 1:13-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Id.* "Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006); *see also United States v. McBride*, 676 F.3d 385, 403 (4th Cir. 2012) ("[A]ssessing [whether evidence is] relevan[t] is at the heart of the district court's trial management function."). A district court therefore has "broad discretion" in deciding a motion in limine. *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). Nonetheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3.

## III. Discussion

First, Plaintiff moves to prohibit defense counsel from engaging in improper "vouching" by referring to the Defendants as "we," "us," and/or "our." (Dkt. No. 2927 at 4). Defendants state they have no intent to improperly "vouch" and oppose the motion. (Dkt. No. 2966 at 26). The Court **denies** the motion and will address issues related to improper vouching and/or pronoun use if and when they arise at trial.

Second, Plaintiff argues that the Court should exclude all references to the "personal lives and/or backgrounds of counsel." (Dkt. No. 2927 at 4). Defendants agree to the extent they will not "discuss with the jury any personal experience they had with AFFF at military 'firefighting

2

school.'" (Dkt. No. 2966 at 26). Defendants otherwise oppose the motion. Except for the point agreed on by the parties, Plaintiff's motion is **denied**. *See Niles v. Owensboro Med. Health Sys., Inc.*, No. 4:09-CV-00061-JHM, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011) ("Generally, courts afford counsel great latitude in making opening and closing arguments to the jury. Anecdotes and personal experiences, including those involving counsel's family members, are common place in both opening and closing arguments.").

Third, Plaintiffs move to exclude personal testimonials about AFFF and PFAS contaminated water. (Dkt No. 2927 at 5). Namely, Plaintiffs ask the Court to "exclude all testimony, evidence, and/or attorney commentary about the use of AFFF products by Defendants' attorneys, employees, family members, and/or anyone other than Plaintiff. The Court should also exclude all testimony and argument about witnesses, attorneys, and/or their family members and friends drinking PFAS-contaminated water." In response, Defendants "agree their attorneys will not comment on their own or friends' and families' personal use of AFFF products or consumption of water containing PFAS." (Dkt. No. 2966 at 27). Accordingly, the motion is **granted** to this extent. Defendants argue, however, that they should be able to ask (1) whether Defendants' employees "with decision-making authority" consume water containing PFAS; or (2) whether Plaintiff's witnesses consume Stuart's drinking water. As to point (1), the Court will hear argument on this topic at the pretrial conference. *Compare In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01320, 2021 WL 5577409, at *3 (S.D. Ohio Nov. 30, 2021) (permitting testimony of VP of Regulatory Affairs regarding personal implantation of hernia mesh device at issue for "sole purpose of showing Defendants' knowledge and state of mind" and further requiring defendants establish witness "had a high-level decision making authority within the defendant corporation") *with In re: Tylenol (Acetaminophen) Mktg.*, No. 2436,

2016 WL 3125428, at *4 (E.D. Pa. June 3, 2016) (excluding testimony of defendant's employees about whether they personally took Tylenol under Rule 403 because "any probative value would be substantially outweighed by the prejudice of hearing employees who were loyal to the company offer benefits, while plaintiff could not rebut with testimony of consumers who did not take product because of risks"). As to point (2), the Court will also address the matter at the pretrial conference and/or during trial given the potential relevance of said testimony. *See In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *4 (information as to plaintiff's witnesses use of Tylenol "may be relevant to the plaintiff's case"); (Dkt. No. 2966 at 29) (arguing that if "public officials in Stuart were aware of the presence of PFAS in the City's water supply but continued to drink the water . . . that fact might suggest that they considered the risk of harm to be remote or speculative" and such action would cast doubt on their credibility).

Fourth, Plaintiff argues the Court should exclude evidence and argument regarding Plaintiff's attorneys' professional associations, trial strategies, and educational seminars and materials. (Dkt. No. 2927 at 7). Defendants state they do not intend to introduce such arguments unless "Plaintiff attempts to introduce evidence concerning the number or qualifications of Defendants' attorneys, including that some of them practice at law firms in major cities." (Dkt. No. 2966 at 30). Accordingly, Plaintiff's motion is **granted** on this point.

Fifth, Plaintiff argues that Defendants should be precluded from arguing about "the circumstances *leading* to Plaintiff's choice of attorneys and any advertising by Plaintiff's attorneys." (Dkt. No. 2927 at 8) (emphasis added). Defendants agree on these specifics, (Dkt. No. 2966 at 31) and the motion is **granted** to that extent. Defendants disagree with the motion, however, to the extent Plaintiff seeks to bar "*any* evidence or argument regarding Plaintiff and its attorneys," especially in relation to "Plaintiff's decision to abandon its transition to the Floridan

4

Aquifer and seek damages for remediating water from the Surficial Aquifer," which Defendants contend is lawyer driven and relevant to "causation, damages, and Plaintiff's credibility." (*Id.* at 31) (emphasis added). On this point, the Court reserves ruling until the pretrial conference and/or trial when the parties can more specifically explain their respective positions and present pertinent argument.

Sixth, Plaintiff seeks to preclude Defendants' counsel from expressing any "sympathy" for Plaintiff's alleged injuries. (Dkt No. 2827 at 9). The motion is **denied** on this point. *See Tereskun-Arce v. KW Int'l, Inc.*, No. 5:18-CV-295-OC-30PRL, 2019 WL 13245750, at *2 (M.D. Fla. Dec. 16, 2019) (denying similar motion in limine, noting that precluding defendant from "expressing any sympathy regarding the accident . . . could potentially inflame the jury").

Seventh, Plaintiff seeks to preclude any argument on how a verdict would economically affect Defendants or society, including any argument as to a "litigation crisis" or "lawyer-driven litigation." (Dkt. No. 2927 at 9-10). Defendants oppose, though they do agree not to argue that this case is part of a "litigation-crisis" or otherwise constitutes "lawsuit abuse." (Dkt. No. 2966 at 33). Plaintiff's motion is **granted** to the extent that Defendants may not argue how a verdict would affect society, affect the cost or production of other products, or affect or result in the firing of Defendants' employees. Defendants may argue, however, as to "the financial impact to their business from a punitive damages award." *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 918214, at *7 (N.D. Fla. Mar. 10, 2021). As to whether Defendants may employee the term "lawyer-driven" to describe Plaintiff's decision to "discontinue the transition to the Floridan Aquifer as Plaintiff's main water source and instead expand the PFAS treatment facilities at its existing water source, the Surficial Aquifer," the Court defers ruling until the pretrial conference where, as noted above, this subject will be addressed.

Eighth, Plaintiff argues that if Defendants cross-examine Plaintiff's experts "beyond payments made in the context of *Stuart* . . . Plaintiff should be afforded an opportunity to put the amount of compensation received by its experts into context and elicit testimony regarding the number of cases involved in the AFFF litigation and the scope and breadth of claims being pursued against Defendants and the benefit of the expert's work in those cases." (Dkt. No. 2927 at 11). Defendants state that they do not intend to introduce "evidence or argument regarding Plaintiff's experts' compensation for work performed outside this specific litigation." (Dkt. No. 2966 at 35). Accordingly, Plaintiff's motion is **denied as moot** on this point.

Ninth, Plaintiff asks that the Court preclude testimony or argument that Plaintiff's experts have not publicized/published their expert opinions. (Dkt. No. 2927 at 11). Defendants oppose. (Dkt. No. 2966 at 36). The Court **grants in part and denies in part without prejudice** Plaintiff's motion on this point. While the Court will not allow Defendants to suggest to the jury that Plaintiff's experts could have freely published the expert reports produced in this case as they were subject to a protective order, *see* Case Management Order No. 4.A, (Dkt. No. 1523); *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. MDL 2592, 2017 WL 2780760, at *4 (E.D. La. May 26, 2017) ("This Court finds that experts were retained to comment on *this* case and to give opinions in *this* case to *this* court in *this* trial. It would not, therefore, be fair to ask whether they have written any articles or books when, for the most part, they are neither obligated nor allowed to publish any opinions or tell the Government they are incorrect before the trial or ever."), the remainder of Plaintiff's motion is overly broad and the Court will consider specific lines of questioning on peer review/publication as they arise at trial and in the context of specific expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 506 U.S. 579, 593 (1993) (noting that whether an expert's opinion "has been subject to peer review and publication" is a consideration regarding the

6

admissibly of expert testimony); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995).

Last, Plaintiff seeks to preclude evidence regarding Defendants' corporate character and good acts. (Dkt. No. 2927 at 12). Plaintiff argues such information is irrelevant and precluded by Fed. R. Evid. 401(a)(1) (evidence of a "person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait"). Defendants oppose, arguing they should be able to provide "background" information about the products they manufacturer, including, for example, that 3M manufactured "respirators that were used to prevent the spread of COVID-19." (Dkt. No. 2966 at 38); (*Id.* at 39) (arguing Defendants' good acts may be relevant to punitive damages). Currently, the Court **defers** ruling on the matter until the pretrial conference where any defendant that intends to present such information in opening statements should be prepared to describe with specificity the "good acts" or background information it intends to discuss. *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020) ("As Defendants correctly point out, parties are generally allowed to describe the nature of their business so long as it will assist the jury in understanding the factual issues in the case."); *Id.* (allowing, in hernia mesh bellwether, defendants to "explain briefly what their companies do and produce, which may include some reference to COVID-19 related efforts []if they are significant and form a large part of Defendants' business"). As to the question of whether such evidence is relevant to punitive damages, the Court will rule at trial on such proposed evidence as it is raised.

**IV.    Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART, DENIES IN PART, AND DENIES IN PART WITHOUT PREJUDICE** as detailed herein Plaintiff's omnibus motions in limine no. 7 (Dkt. No. 2927).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

May 26, 2023<br>
Charleston, South Carolina